# THE STATE OF MISSOURI ex rel. KANSAS CITY LOAN GUARANTEE COMPANY, Respondent, v. D. V. KENT, City Auditor, Appellant.

### Kansas City Court of Appeals, February 2, 1903.

1. **Municipal Corporations: CONTRACTS: CITY ORDINANCE: EMPLOYEES.** Any valid provision of an ordinance in relation to the employment of city employees enters into the contract of employment as effectually as if written therein.

2. ――――: ――――: **EMPLOYEES: ASSIGNMENT. OF WAGES.** A provision in a contract of an employee with a municipality that a claim for wages arising thereunder shall not be assigned, is valid.

3. ――――: ――――: **ORDINANCE: ASSIGNMENT OF WAGES.** A municipality has a dual capacity, one for the exercise of powers of government, and the other more in the nature of a private capacity whereby it contracts for its own betterment; and an ordinance prohibiting the assignment of their wages by its employees is a valid exercise of the latter power.

4. ――――: ――――: ――――: ――――: **CONSTRUCTION.** It may be that in construing such an ordinance, cases falling within the literal terms thereof would fall without its meaning, such as administrators, assignees, etc.

5. ――――: ――――: ――――: ――――: .CASES. Certain cases distinguished and harmonized.

Appeal from Jackson Circuit Court.—*Hon. J. H. Slover,* Judge.

REVERSED.

*L. E. Durham* and *R. J. Ingraham* for appellant.

(1) Relator must establish its clear legal right to the warrant sought. State ex rel. v. Newman, 91 Mo. 445; State ex rel. v. Williams, 99 Mo. 291; State ex rel. v. Lesueur, 136 Mo. 452; State ex rel. v. Johnson, 123 Mo. 43. (2) Relator's right to said warrant as assignee

is determined by the contract of employment between
Dock Wilson and Kansas City. Sumrall v. Ins. Co.,
40 Mo. 27; Babb v. Taylor, 56 Mo. 311; Thompson v.
Roatcap, 27 Mo. 283. (3) Kansas City, in making such
contract, acted in its private or business capacity as
distinguished from its governmental or public capacity.
Bank v. Arkansas City, 76 Fed. Rep. 282; Indianapolis
v. Gas Light Co., 66 Ind. 396; Savings Fund v. Phila-
delphia, 31 Pa. St. 183; Gas Light Co. v. New Orleans,
42 L. Ann. 188; Elliott on Municipal Corporations, sec.
22; 1 Dillon on Municipal Corporations (3 or 4 Ed.),
sec. 66; Baily v. Philadelphia, 184 Pa. St. 494. (4)
Acting in its private or proprietary capacity, Kansas
City had under its charter the power to make any con-
tract with its employees that any private corporation
or individual could make. Art. 3, sec. 1; art. 13, sec.
1; art. 6, sec. 12; art. 4, sec. 15, Kansas City charter;
Indianapolis v. Gas Light Co., 66 Ind. 66; Galena v.
Corwith, 48 Ill. 423. (5) And all ordinances of Kansas
City existing at the time of the said contract or em-
ployment, relating to the subject-matter or manner of
execution of the contract, entered into and became a
part of it. Pryor v. Kansas City, 153 Mo. 135; St.
Charles v. Hackman, 133 Mo. 634; Society v. Clements,
140 U. S. 226. (6) Further, relator being a resident
of Kansas City must take notice of all ordinances of
the municipality. Jackson v. Railroad, 118 Mo. 199;
Palmyra v. Morton, 25 Mo. 593; Railroad v. Calder-
wood, 89 Ala. 247; Mitchell v. Railroad, 51 Mich. 236;
Horr and Bemis Municipal Pol. Ord., sec. 184. (7)
The ordinance prohibiting the city auditor from deliv-
ering warrants to assignees became a part of the con-
tract of employment between Dock Wilson and Kansas
City, and such contract is binding and valid. Delaware
Co. v. Safe Co., 133 U. S. 473; Smelting Co. v. Starling,
127 U. S. 367; Burck v. Taylor, 152 U. S. 633; Omaha
v. Oil Co., 55 Neb. 337.

*Henry L. Jost* for respondent.

(1)  The trial court found that Wilson had entirely earned his wages at the time he sold and assigned his claim therefor to the relator.  The appellate court will defer to and adopt this finding.  Roberts v. Herryford, 54 Mo. App. 365; Hartley v. Hartley, 143 Mo. 216; Shanklin v. McCracken, 151 Mo. 587; Brugge v. Bedford, 89 Mo. App. 553.  (2) The work having been already performed, and the wages already earned, Wilson's right to sell and assign his claim therefor to the relator, is a fundamental and common right under the laws of this State.  Birkbeck v. Stafford, 23 How. Pr. (N. Y.) 236; Thompson v. Cullers (Tex. Ct. of Civil App. 1896), 35 S. W. 412; Greenhood on Public Policy, pp. 351-353; Missouri Bill of Rights, sec. 4; Ciples v. Blair, Rice Chancery (S. Car.) 60-66; Schwenk v. Wycoff (N. J.), 9 L. R. A. 126; Beal v. McVicker, 8 Mo. App. 203; State v. Williamson, 118 Mo. 146; Johnson County v. Bryson, 27 Mo. App. 341; Page v. Gardner, 20 Mo. 511.  (3) The ordinance pleaded by the city auditor, in so far as it operates to restrain the free assignment of wages already earned when assigned, is invalid and void and of no binding obligation whatever, and does not excuse the auditor from delivering the warrant in controversy to the relator.  Wood v. Kansas City, 162 Mo. 304; Mining Co. v. Elwood, 114 Ind. 336; Bills v. Goshen, 117 Ind. 225; 1 Dillon on Municipal Corp. (4 Ed.), sec. 947; Kansas City Charter and Rev. Ord. (Ed. of 1898), page 20 and authorities there cited; Kansas City Charter, art. 3, sec. 1, subdivision 2; Kansas City Charter, art. 2, sec. 10; Kansas City Charter, art. 3, sec. 2; Kansas City Charter, art. 4, sec. 30; 21 Am. and Eng. Ency. of Law (2 Ed.), 948, 949, 950; St. Louis v. Tel. Co., 96 Mo. 628; R. S. 1899, sec. 895; Page v. Gardner, 20 Mo. 508; Kansas City v. Hallet, 59 Mo. App. 160; 1 Dillon on Mun. Corp. (4 Ed.), secs. 329, 330, 332; St. Louis v. Russell, 116 Mo. 257; Hannibal v.

Tel. Co., 31 Mo. App. 33; Shreveport v. Levy, 26 La. Ann. 671; Barling v. West, 29 Wis. 315; Tiedeman on Limitations of Police Power, page 4; State v. Addington, 12 Mo. App. 219; Deems v. Baltimore, 80 Md. 174; 1 Dillon on Mun. Corp. (4 Ed.), sec. 325; City of St. Charles v. Nolle, 52 Mo. 122; Anderson v. Wellington, 40 Kan. 173-177; Buffalo v. Baking Co., 35 App. Div. (N. Y.) 432; Milliken v. Weatherford, 54 Texas 388; Carr v. St. Louis, 9 Mo. 190; Paris v. Graham, 33 Mo. 94; Norton v. Shelby, 118 U. S. 425-442.

ELLISON, J.—The relator is the assignee of an account of $8.75 for labor in the stables of the waterworks department of Kansas City, Missouri performed by one Dock Wilson. The defendant is the auditor of Kansas City and refused to give to relator, as such assignee, a city warrant for said sum. The relator thereupon instituted this proceeding by mandamus to compel the delivery of the warrant. The trial court granted the writ and the city appealed. The refusal of the city auditor is based upon the following ordinance of the city, claimed to prohibit an assignment of wages or salaries, to-wit:

"Section 1. No person shall combine his claim against Kansas City for salary or for any other demand, with that of another or others, thereby procuring one warrant for both or all of said claims instead of two or more warrants, and no warrant shall be issued by the city auditor or countersigned by the comptroller or paid by the city treasurer, to any person other than the one who has actually done the work, performed the services, supplied the material, furnished the supplies, or has complied with a contract out of which his claim arose.

"Section 2. The city auditor shall allow no person to receipt the auditor's books for warrants issued other than the person actually doing the work, performing the services, supplying the materials, or who has

complied with the terms of a contract existing between him and Kansas City; provided, however, that in the event of non-residents desiring to receipt for warrants on said auditor's book, they may do so by resident agent or attorney duly authorized in writing; provided, further, that where such non-resident has no resident agent the city comptroller shall forward to him his warrant.

"Section 3. Any person failing, neglecting or refusing to comply with any of the provisions or requirements of this ordinance shall be fined by the police judge not less than five dollars nor more than five hundred dollars and any officer or employee of the city, who shall sell or assign his unearned salary, unearned wages or earnings, shall thereby be deemed to have committed an act which is hereby declared to be sufficient cause for his removal."

The ordinance is not well drawn. The first section prohibits the issuing or payment of a warrant to any other person than the one who performed the service for which payment is asked. The second section prohibits any other person than the one performing the service from receipting for a warrant. And finally, the third section makes it unlawful for any officer or employee to sell or assign his *unearned* salary or wages. It would have been better if the first section had, in terms, forbid or made unlawful, an assignment of a claim, earned or unearned, as the city counsel might believe the city's interest to demand. But the relator puts its right to the warrant on the ground that the wages were wholly earned when assigned to it, and attacks the ordinance on the theory that in so far as it seeks to prevent the assignment of wages which were wholly earned at time of assignment, it is void.

The defendant seems to seek to uphold the ordinance as a valid preventive of the assignment, whether the wages be earned or unearned, though he contends they were not wholly earned in this case. Relator's po-

sition discloses that if the city had the power to declare illegal an assignment of wages wholly earned, no contention would be made over the right to prevent an assignment of wages which were unearned. So, therefore, the important consideration is as to the power of the city, by ordinance, to make illegal the assignment of wages which have been earned.

1.    There can be no doubt that any valid provision of an ordinance in relation to the employment of city employees enters into the contract of employment as effectually as if written in the contract. This is so held in all instances where the law is one enacted by the Legislature or the Congress; whether the law be local or general. State ex rel. Goodnow v. Police Commissioners, 71 S. W. 221. In that case it was said "that the defendants hold their offices by virtue of the Act of 1874, and amendments thereto, and not by force of the city charter, and that the same is true of the relator. It also follows that when relator was appointed a member of the police force by virtue of the act, he accepted that appointment subject to all the terms and provisions of that act as fully as if those terms had been specified in his commission." And it is so held as applicable to the valid enactment of a municipal council. St. Charles v. Hackman, 133 Mo. 634, 642.

2.    It therefore comes to this question: Is it a valid contractual provision to insert in a contract with a municipality that a claim for the wages arising thereunder shall not be assigned? We think that it undoubtedly is. City of Omaha v. Standard Oil Co., 55 Neb. 337; Burck v. Taylor, 152 U. S. 634.

While the right to assign a matured claim may be a fundamental right existing in the owner of the claim, as contended by relator, it does not follow that he may not curtail such right by contract. And so it is said: "A contract to pay money may doubtless be assigned by the person to whom the money is payable, *if there is nothing in the terms of the contract* which manifests the inten-

tion of the parties to it that it shall not be assignable"
(italics ours). Delaware Co. v. Diebold Safe Co., 133
U. S. 473, 478. "At the present day, no doubt, an
agreement to pay money or to deliver goods may be
assigned by the person to whom the money is to be paid
or the goods are to be delivered, if there is nothing in
the terms of the contract, whether requiring something
to be afterwards done, or by some other stipulation,
*which manifests the intention* of the parties that it shall
not be assignable." Arkansas Smelting Co. v. Belden
Mining Co., 127 U. S. 379, 387.

A right which, for a consideration, is contracted
away is not any longer a right to be asserted by the con-
tractor. The agreement in this case was that the city
would pay to Wilson a stipulated sum per day, if he
would do certain work and surrender his right of as-
signment of his claim for such work to a third party,
Wilson had as much legal capacity to agree to forego
his ordinary right of assignment as he had to agree to
perform the labor itself.

3. It is claimed that while these views may be cor-
rect, they are founded on the assumption that the ordi-
nance which we have inserted in the contract between
Wilson and the city as a part of it, is valid. But relator
claims that it is invalid, as being beyond the power of
the city, and therefore it could not become an effective
part of the contract. We must also rule this point
against relator.

A city with the comprehensive charter possessed by
Kansas City, and usually by all municipalities in this
country, has a dual capacity, one as a public corporation
exercising powers of government within the terms of its
charter, and the other more in the nature of a private
capacity whereby it makes contracts (also within the
terms of its charter) for its own betterment, as individ-
uals may. The distinction between the two capacities
was fully considered and set forth in Bullmaster v. St.

Joseph, 70 Mo. App. 60, and again in Boothe v. Fulton, 85 Mo. App. 16.

The ordinance in controversy was a valid exercise of the city's authority in the latter capacity. It had a right to provide that its employees should not assign their claims so as to bring upon it the hazard of knowing who the proper claimant was. To prevent possible frauds, inconvenience of account, and the like; as well as to put a stop to the notorious practice, becoming an evil in municipal employment of selling claims at ruinous discount, and thus impairing the efficiency of the service of its employees. The ordinance is in harmony with other well-recognized rules applicable to municipalities. Thus, a city is not liable to garnishment for the wages of its employees, as would be an individual or other corporation. A city "should not be compelled to stand at the bar of all courts in the State and participate in the judicial controversies carried on between debtors and creditors. Whilst these contests would be going on, the public interests would suffer, by abstracting from their corporate duties the time and attention of the officers and occupying them in contests about which the corporation had no interest. And, however desirable it may be to creditors to enforce against the officers of the corporation their just demands, by the means resorted to in this case, yet we think that public policy forbids the imposition of such a liability upon the corporation." Hawthorn v. St. Louis, 11 Mo. 60.

The right, as well as the propriety and validity of such statutes, has the sanction of the Supreme Court of the United States. It is declared by the Federal statutes (section 3477): "All transfers and assignments made of any claim upon the United States or any part or share thereof or interest therein, whether absolute or conditional and whatever may be the consideration therefor and all powers of attorney or orders or other authority for receiving payment of such claim or any part thereof or share thereof, shall be absolutely null

and void, unless the same shall be freely made and executed in the presence of at least two attesting witnesses after the allowance of the claim and the ascertainment of the amount due and the issuing of a warrant for the payment thereof."

Under this statute it was held that every claimant against the Government was incapacitated from creating any interest in the claim in any other person than himself. Spofford v. Kirk, 97 U. S. 407; United States v. Gillis, 95 U. S. 407; Goodman v. Niblack, 102 U. S. 556; Hobbs v. McLean, 117 U. S. 567. In the latter case it was said, the statutes were enacted "for the protection of the Government. Goodman v. Niblack, 102 U. S. 556. They are passed in order that the Government might not be harassed by multiplying the number of persons with whom it had to deal and might always know with whom it was dealing until the contract was completed and a settlement made. . . . The Government said, so far as we are concerned you and you only will be recognized in the execution of the contract and in the payment of the consideration."

4. While it is not a question in this case, yet in view of the general terms we have used, it may be proper to remark that cases might arise which, falling within the literal terms of the ordinance, would fall without its meaning. Thus, an administrator, or a general assignee under State laws, or in bankruptcy, might be held not within the intent of the ordinance where it provides that *no* one other than he who actually performed the work shall receive a warrant, or payment thereof.

5. What we have written answers the argument advanced by relator. He cites, among other authorities, State v. Williamson, 118 Mo. 146, and Wood v. Kansas City, 162 Mo. 303; especial reliance being placed on the latter case. But, in our view, it has no application whatever. The decision in that case is that the city

Vol 98 app—19.

has no power to take from one of its officers the statutory fees he earns as a notary public. The former decides that an unearned future salary can not be assigned, the court remarking, in the course of the opinion, that it was the policy of the law, adopted for the efficiency of public service, that an officer should receive the money provided therefor. In Bliss v. Lawrence, 58 N. Y. 442, a case commended by Judge BURGESS in State v. Williamson, it is said of this doctrine: "The substance of it all is, the necessity of maintaining the efficiency of the public service by seeing to it that public salaries really go to those who perform the public service. To this extent, we think, the public policy of every country must go to secure the end in view." This language and that of Judge BURGESS in State v. Williamson, is broad enough to fairly sustain an interpretation which would prevent the assignment of a salary already earned. But conceding such salary may be assigned, those cases certainly fall far short of saying anything against the right of a municipality to forbid any interference with the earnings of a city employee or official, until after he had obtained his warrant and the money thereon has been paid to him. On the contrary, the language of those cases to which we have called attention, lends support, not only to the right to forbid it, but to the propriety of so doing.

The judgment is reversed and the writ quashed. All concur.