## Barringer v. Bes Line Const. Co.

No. 2190, Okla. T.   Opinion Filed January 26, 1909.

(99 Pac. 775.)

**ASSIGNMENTS—Non-Assignability of Time Check.** A time certificate was executed by a construction company to an employe in payment of balance due upon open account. It was stipulated in the certificate that the same should be nontransferable, and should be payable only to the person to whom it was issued when properly receipted by him in the presence of the paymaster of the construction company. The payee executed an agreement whereby he agreed to present in person the time certificate for payment and that the same should be nontransferable. **Held,** that such time certificate is not assignable, and that an attempted assignment of the same is void as between the assignee and the maker of the certificate.

(Syllabus by the Court.)

*Error from District Court, Logan County; C. F. Irwin, Judge.*

Action in the probate court by William Barringer against the Bes Line Construction Company. From a judgment for defendant in the district court on appeal from the probate court, plaintiff brings error. Affirmed.

This action was commenced originally in the probate court of Logan county and afterwards on appeal to the district court was tried by the court upon an agreed statement of facts without the intervention of a jury. The only question presented for review in this court is as to whether the district court erred in the final judgment rendered in favor of the defendant and against the plaintiff, who is plaintiff in error in this court. The action is for recovery upon several time checks issued by the Bes Line Construction Company for labor performed by various persons for it in constructing a railway. All the time checks are of the same form and in the same language, except as to names, dates, and amounts. Each time check contains the following clause:

"This time certificate is issued in payment of the above account for labor and is payable on regular pay day of Bes Line

Construction Co., about ————. This time certificate is non transferable and will be paid only to the person to whom it is issued, and who actually performed the labor above mentioned when properly receipted in presence of pay master."

Each time check was made upon a form from a blank form book of the construction company, in which there was a corresponding stub on which the payee of each time check signed an agreement containing the following clause:

"I accept the above amount as being correct and in full payment of the above account and to be paid on regular pay day about,—and agree to present time certificate in person on or before the above date, agreeing that said certificate is non-transferable. Accepted. [Signed] ————, Payee."

*Devereux & Hildreth,* for plaintiff in error, cited and discussed: Wilson's Rev. & Ann. St. 1903, §§ 813, 4162, 4163; *Insurance Co. v. Champlin,* 11 Okla. 184; *Bewick Lumber Co. v. Hall,* 94 Ga. 539; 2 Am. & Eng. Enc. Law (2d Ed.) 1017.

*Dale & Bierer,* for defendant in error, cited and discussed: Wilson's Rev. & Ann. St. 1903, § 774 (2); *Burck v. Taylor,* 152 U. S. 634; *Boston Ice Co. v. Potter,* 123 Mass. 28; *Larue v. Groezinger* (Cal.) 24 Pac. 42; *Tabler v. Sheffield L. & I. Co.,* 79 Ala. 377.

HAYES, J. (after stating the facts as above.) The only question presented by the record in this case is whether the time checks sued upon are assignable. The language of these certificates and of the agreements executed by the payees at the time they received the time certificates is not ambiguous. It is clear that it was the intention of the construction company to stipulate and of the payees of the time checks to agree that they should not be assigned, and unless there is some provision of law that renders this part of the contracts inoperative, plaintiff in error was not entitled to recover.

It is the contention of plaintiff in error that section 4163, Wilson's Rev. & Ann. St., which reads, "a thing in action, arising out of the violation of a right of property, or out of an obligation, may be transferred by the owner," has this effect. The only au-

thority cited by plaintiff in error that is applicable and supports his contention is the case of *Bewick Lumber Co. v. Hall,* 94 Ga. 589, 21 S. E. 154. In that case it was sought to recover upon a credit check which contained a stipulation that it was not transferable. The court held under a statute providing that all choses in action arising upon a contract were assignable so as to vest the title in the assignee that the action could be maintained. The opinion is very brief. The court neither assigns reasons nor cites authorities in support of the conclusion which it reached. In our opinion this case is against the weight of authorities. At common law rights arising out of contracts, except certain classes to which belonged negotiable instruments, were not assignable without the consent of the adverse party. The right of an assignee, however, was recognized and enforced in courts of equity where the assignor refused to permit the assignee to bring an action at law in the assignee's name. Under the influence of the doctrine of the equity courts, the common-law rule became a mere rule of pleading, in that an assignment of contractual rights could not be made so as to authorize the assignee to maintain suit in his own name. But this rule in most jurisdictions has now been modified until an assignee can maintain an action in his own name. The change has been due largely to statutes which may be divided into two classes: One class consisting of statutes similar to ours, providing that choses in action may be transferred; and the other class providing that an action must be brought in the name of the real party in interest. 3 Page on Contracts, p. 1935. The same author, on page 1936 of the same volume, in discussing what contracts may be assigned, excepts therefrom the following three classes: Personal contracts; contracts containing a provision against assignment; and contracts forbidden by statute to be assigned. The effect of plaintiff in error's contention is that section 4163, Wilson's Rev. & Ann. St., *supra,* not only authorizes assignment of choses in action arising out of contracts but forbids the execution of contracts in which it is stipulated that no assignment may be made. We are un-

able to, concur in this contention.    The purpose of this statute was not to prohibit parties from contracting that their contracts shall not be assignable.    The intention of this statute and of similar statutes as they exist in other states is to remove the restriction of the common-law rule upon choses in action which prevented their transfer and to permit the assignee to maintain suit in his own name.

In *Arkansas Valley Smelting Company v. Belden Mining Co.,* 127 U. S. 379, 8 Sup. Ct. 1308, 32 L. Ed. 246, the court, speaking through Mr. Justice Gray, said:

"At the present day, no doubt, an agreement to pay money or to deliver goods may be assigned by the person to whom the money is to be paid or the goods are to be delivered, if there is nothing in the terms of the contract, whether by requiring something to be afterwards done by him or by some other stipulation, which manifests the intention of the parties that it shall not be assignable; but every one has a right to select and determine with whom he will contract, and cannot have another person thrust upon him without his consent."

The doctrine announced in this case is approved in *Delaware County Commissioners v. Diebold Safe & Lock Co.,* 133 U. S. 473, 10 Sup. Ct. 399, 33 L. Ed. 674, and in *Burck v. Taylor,* 152 U. S. 635, 14 Sup. Ct. 696, 38 L. Ed. 578.

In the case at bar the payee of each time check had an open account with the construction company before his acceptance of the time check in payment thereof which could be assigned; but the time check is a new and independent contract from the contract of the payee and of the construction company on open account.    That the construction company did not desire to deal upon the certificate with any other person than the payee is expressly indicated by the language of the contract and assented to by the payee, not only by his acceptance of the contract containing a stipulation that it shall be nontransferable, but also by his affirmative act in signing an agreement to that effect.    What might have been the reason of the construction company for desiring to deal with no other person under those contracts than the payees therein is unnecessary for us to conjecture.    The argument that

the payee in the time check was in better condition before accepting the time check in settlement of his rights under the open account is without force. Evidently the payee did not think so, or he would not have entered into this second contract in full settlement of his rights under the former contract.

In *City of Omaha v. Standard Oil Company*, 55 Neb. 337, 75 N. W. 859, the contract involved was a contract between a street lighting company with the municipality to light certain of its streets for a period of two years. The consideration of the contract was to be paid in monthly installments. The contract contained a stipulation that it should not be assigned. Some of the installments which had become due under the contract were assigned by the lighting company to the Standard Oil Company; but the court held that, under the stipulation in the contract, the lighting company was prohibited from assigning any of its rights under the contract and that the assignee could not recover thereon. The court said:

"The assignment of the October installment, if valid, not only tranferred to the plaintiff a right secured to the lighting company by the contract, but affected, as well, an important obligation on the part of the city. It compelled the city to deal with strangers, and to determine at its peril which of the contesting claimants was entitled to the fund. This may have been one of the very contingencies contemplated by the city and against which it sought to provide by making the contract nonassignable. Another object in view might have been to prevent the company from losing interest in the performance of the contract by divesting itself of all beneficial interests therein. But it is needless for us to speculate on the motives of the city's action. It is enough for us to know, whatever its reasons may have been, that it has in plain language stipulated against an assignment of the contract. That stipulation is valid, and must be enforced."

See, also, *Olof Zetterlund et al., v. Texas Land & Cattle Co.*, 55 Neb. 355, 75 N. W. 860. The same court in *Murphy v. City of Plattsmouth*, 110 N. W. 749, wherein action was brought by the assignee of a contract to which the city of Plattsmouth was a party and in which it was stipulated that it should not be assigned,

after denying the right of plaintiff to recover upon one ground, said:

"There is another reason why the judgment must be reversed. The contract in express terms provides that 'the second party [Fanning] shall not assign or transfer this contract or sublet any of the work embraced in it.' The terms and conditions of a contract have the force of law as to those who are parties thereto."

The Supreme Court of California, in discussing the effect upon the common-law rule as to the assignability of choses in action of code provisions similar to ours, after referring to the provisions of the Civil Code of that state, which provides that written contracts "for the payment of money or personal property" may be transferred by indorsement, and quoting the following sections from the statutes of that state:

"Sec. 1044. Property of any kind may be transferred, except as otherwise provided by this article."

"Sec. 1458. A right arising out of an obligation is the property of the person to whom it is due, and may be transferred as such."

—Said:

"These sections seem to do away with whatever restrictions there may formerly have been upon the power of the parties to assign their ordinary contracts. It is clear, however, that the provisions cannot be construed to render assignable all contracts whatever, regardless of their nature or effect, but must be taken with some qualification. In the first place, it was not intended to render null any agreement that the parties may have made on the subject. Hence, if the contract itself provides in terms that it is not transferable, it certainly cannot be transferred, although it otherwise might be so. Leases and the tickets usually issued by railroad companies are familiar instances of this. Upon the same principle, although a contract may not expressly say that it is not transferable, yet, if there are equivalent expressions or language which excludes the idea of performance by another, it is not assignable." (La Rue c. Groezinger, 84 Cal. 282, 24 Pac. 43, 18 Am. St. Rep. 179.)

In State ex rel. Kansas City Loan Guarantee Co. v. D. V. Kent, 98 Mo. App. 281, 71 S. W. 1066, it was held that a muni-

cipality has a dual capacity—one for the exercise of powers of government and the other in the nature of a private capacity whereby it may contract for its own betterment—and that a municipality acting in the latter capacity has power to provide by ordinance that its employes shall not assign wages earned by them. In that case the relator, as assignee of an account of $8.75 for labor performed by an employe of Kansas City, sought to have the auditor of Kansas City ordered by mandamus to issue to him warrant for said sum. By an ordinance of that city, the city auditor was prohibited from issuing, the comptroller from countersigning, and the treasurer from paying, warrants to any person other than the one who had actually done the work, performed the services, or supplied the material for which the payment was demanded. The court reversed the judgment of the trial court awarding the writ. Mr. Justice Ellison, who delivered the opinion, after holding that the ordinance became a part of the contract with the employe, said:

"It therefore comes to this question: Is it a valid contractual provision to insert in a contract with a municipality that a claim for the wages arising thereunder shall not be assigned? We think that it undoubtedly is. [Citing authorities.] While the right to assign a matured claim may be a fundamental right existing in the owner of the claim, as contended by relator, it does not follow that he may not curtail such right by contract; and so it is said: 'A contract to pay money may doubtless be assigned by the person to whom the money is payable, if there is nothing in the terms of the contract which manifests the intention of the parties to it that it shall not be assignable.' *Delaware Co. v. Diebold Safe Co.*, 133 U. S. 473, 478, 10 Sup. Ct. 399, 33 L. Ed. 674."

And he further said:

"A right which for a consideration, is contracted away, is not any longer a right to be asserted by the contractor. The agreement in this case was that the city would pay to Wilson a stipulated sum per day if he would do certain work and surrender his right of assignment of his claim for such work to a third party. Wilson had as much legal capacity to agree to forego his ordinary right of assignment as he had to agree to perform the labor itself."

*Tabler, Crudup & Co. v. Sheffield Land, Iron & Coal Co.,*
79 Ala. 377, 58 Am. Rep. 593, is a case in which the facts are
very similar to the facts in the case at bar.    In that case an action
was brought by the assignee of a labor ticket in which it was stip-
ulated that the ticket should not be transferable and should be
payable to employe only.    The court held that the agreement of
the parties that the same should not be transferable destroyed the
right of the payee therein to assign the same, and that the assignee
could not recover.    In the case at bar the payee of each time
check had with the construction company a contract of employ-
ment, the terms of which do not appear from the record.    On
this contract, whether oral or written does not appear, the construc-
tion company became indebted to each employe on open account
for services performed, and most of the employes became indebted
to the construction company for board, supplies, and other material
furnished.    The employe's right under his open account was as-
signable; but he by contract with the construction company set-
tled his rights under the open account by accepting therefor the
time check.    The rights of the parties under the contract made
by them are not to be determined by whether one or the other
is in a better position than before he made it, but whether they
had the capacity to make it, and the contract made is not forbid-
den by law.    The construction company agreed to execute a time
check in settlement of its obligations under the open account, upon
the condition that the time check should not be assignable, and
should be presented in person and payment thereof receipted in
person by the payee therein.    The employes accepted this written
obligation of the construction company in preference to and in
settlement of the obligation of the company under the open ac-
count.    There is no contention that the payees of the time checks
have performed their part of the agreement by presenting the
checks for payment and offering to receipt for same.

It is argued that this contract is contrary to public policy;
but it has not been made to appear in what respect it is injurious
to the public, nor does it appear to be in violation of any statutory

provision or any rule of the common law. The statute does not forbid such contracts and at common law choses in action were not alienable even without a stipulation that they should not be alienable, and since the assignments of the certificates in this case are in violation of the contracts, they are therefore void as between the maker of the certificates and the assignees.

It has been urged that to permit construction companies and others employing large numbers of men to make contracts or agreements in the nature of the certificates in this case will result in great injury and detriment to the employes, in that it will tend to force them to discount their time checks at a high rate of discount to the makers thereof. If it were our duty to make the law, this argument would appeal to us with much force and persuasion, but it is our duty only to ascertain whether this contract is forbidden by the law. We think not. The judgment of the trial court is affirmed.

All the Justices concur.