### PARISIAN LIVE DYERS & CLEANERS v. SPRINGFIELD. (No. 8801.)*

(Court of Civil Appeals of Texas. Galveston. June 24, 1925. Rehearing Denied Oct. 8, 1925.)

**1. Corporations ⚖️⟶398(3)—Contract by principal stockholder for benefit of corporation enforceable by corporation.**

Contract, made by principal stockholder of a corporation for its benefit, is enforceable by corporation.

**2. Contracts ⚖️⟶312(4)—Contract, restricting employee from engaging in same business after severance of employment, included contingency of his becoming proprietor of similar business.**

Contract, prohibiting employee from soliciting or driving for any other dry-cleaning company for six months after severance of employment, is violated by such employee driving and soliciting for company of which he is part owner.

**3. Injunction ⚖️⟶118(4)—Averment of inability to respond to damages for breach of contract not necessary, where business is unique and limited as to time and territory.**

In action to enjoin former employee in dry-cleaning business from violating a contract prohibiting his soliciting on same route, an averment of his inability to respond to damages for breach of contract is not necessary, where evidence of personal relation between driver and customers enabling them to carry the trade with them showed that contract was related to a unique business, limited as to time and territory, warranting equitable restraint in its enforcement.

**4. Contracts ⚖️⟶117(2)—Contract, precluding employee from working for other dry-cleaning company for six months after termination of employment, held not in restraint of trade.**

Contract between a dry-cleaning company and an employee, prohibiting latter from driving or soliciting on same route for any other dry cleaning company for six months after severance of employment, was not unenforceable as in restraint of trade, since it was in no way injurious to the public.

Appeal from District Court, Harris County; Chas. E. Ashe, Judge.

Suit by the Parisian Live Dyers & Cleaners against H. B. Springfield, for a temporary injunction. From an order refusing a temporary injunction, plaintiff appeals. Reversed and remanded, with instructions.

W. F. Tarver, of Houston, for appellant.
A. Judson Henderson and Chas. Murphy, both of Houston, for appellee.

GRAVES, J. This appeal is from an order of the trial court of date May 20, 1925, refusing a temporary injunction to appellant, whereby it sought to have appellee, Springfield, enjoined, for the remainder of a period expiring six months from and after April 11, 1925, from working on a designated route in the city of Houston, either as solicitor or driver, for any person in the dry-cleaning business, basing its claim upon the following contract:

"Whereas, on or about the 22d day of October, 1923, Albert Ott, L. A. Layne sold to H. B. Springfield fifteen (15) shares of capital stock in the Parisian Live Dyers & Cleaners;

"And whereas, the consideration for said trade was five hundred ($500.00) dollars in cash paid by H. B. Springfield and a note for twenty-five hundred ($2,500.00) dollars, due within one (1) year;

"And whereas, since said transaction Albert Ott, for valuable considerations has acquired the interest of L. A. Layne in said note;

"And whereas, Albert Ott is the principal stockholder in said corporation, which is incorporated under the laws of the state of Texas;

"And whereas, Albert Ott has this day paid to H. B. Springfield the sum of fifteen hundred ($1,500.00) dollars in cash and has surrendered to the said H. B. Springfield his note above set out. And said H. B. Springfield has transferred to the said Albert Ott all of the stock owned by him in the Parisian Live Dyers & Cleaners being the fifteen (15) shares of stock above referred to and the said H. B. Springfield is no longer interested in said corporation.

"Said H. B. Springfield desires to work for

said corporation, and the same is satisfactory to said corporation, and it will continue to employ him so long as it is mutually satisfactory.

"But this contract is not to be interpreted as either an employment by the corporation of the said H. B. Springfield or the agreement on the part of the said H. B. Springfield to work for said corporation. The question of employment is to be governed entirely by a separate and distinct contract.

"As Albert Ott is the principal stockholder in said corporation, one of the considerations for his buying this stock was that the said H. B. Springfield would agree that, should he sever his connection with the Parisian Live Dyers & Cleaners, he will not engage himself to any dry-cleaning company in the city of Houston in the capacity of a solicitor or a driver for a period of six (6) months from the date he severs his contract with the Parisian Live Dyers & Cleaners, and that that agreement on the part of the said H. B. Springfield is as much of the consideration for the fifteen hundred ($1,500.00) dollars herein paid and the cancellation of the note as is the surrender of the stock:

"Now, therefore, I, H. B. Springfield, for and in consideration of the cancellation of my note and the fifteen hundred ($1,500.00) dollars to me in hand paid, the receipt of which is hereby acknowledged and confessed, and I hereby transfer to the said Albert Ott fifteen (15) shares of stock herein referred to, and agree, bind, and obligate myself that I will not, within a period of six (6) months from the time I sever my connections with the Parisian Live Dyers & Cleaners, work either directly or indirectly for any person in the dry cleaning business in the city of Houston in the capacity of either solicitor or driver, soliciting trade in the territory on the west side of Main street and south side of Buffalo Bayou.

"Witness my hand at Houston, Tex., this the 4th day of September, A. D. 1924.

"[Signed]  H. B. Springfield."

[1] Ott made this contract with appellee for the benefit of appellant, which entitled the latter to sue for the enforcement of its rights thereunder. Hales v. Peters (Tex. Civ. App.) 162 S. W. 386 (last paragraph in decision); Peters v. Lindsey (Tex. Civ. App.) 144 S. W. 694; Mathonican v. Scott, 87 Tex. 396, 28 S. W. 1063, and cases cited; Gulla v. Barton, 164 App. Div. 293, 149 N. Y. S. 952; Rigney v. N. Y. Cent. R. R., 161 App. Div. 187, 146 N. Y. S 395 (affirmed 217 N. Y. 31, 111 N. E. 226); Harbeck v. Harbeck, 87 Misc. Rep. 420, 149 N. Y. S. 791; 13 C. J. 707, par. 816, and cases cited.

The court at the hearing had before it the full testimony of both Ott and Springfield, as well as certain documentary evidence, inclusive of the copied contract. There had been a prior restraining order granted, and upon this trial the following agreement of counsel was entered of record:

"It is admitted that at the time the injunction was granted that H. B. Springfield was driving on the route contemplated by this contract."

The proof further undisputedly, in fact by the testimony of Mr. Springfield himself, showed that the driving he thus admitted doing on the interdicted route—otherwise called the Montrose route—was for a company composed of three other persons and himself, known as "Houstonian Cleaners," which had been organized by its members about a month after the appellee severed his connection with appellant, to carry on the same line of business it did in the city of Houston, with the appellee as the driver for the new concern on this route he had under the contract so agreed not to drive upon, and that he was so engaged when the writ at the inception of this litigation stopped him.

The appellee's answer to the application for the injunction was that the contract did not bar him from driving upon the route involved for himself, did not contemplate, and was not intended, to cover the contingency of his becoming a proprietor, which he was as a member of the "Houstonian Cleaners," and that if it had any such effect it contravened our anti-trust statutes, and was unenforceable. In refusing the relief sought against him, the court below apparently gave the same meaning to the contract he did.

[2] We think the action was error, and that the writ should have been issued. Construing the contract in the light of the surroundings of the parties and of their testimony as given upon the witness stand, the conclusion seems to us inescapable that the mutual purpose and intent was that appellee should not, either as solicitor or driver, work that particular territory for the brief time specified for a rival business of the same kind. To say that he could evade so clear an obligation as that by merely turning joint proprietor would be to exalt the form (and a very technical form at that) of his agreement above the plain spirit of it. It may be that the instrument was rather inartistically drawn, but the objective of its makers admits, we think, of no substantial doubt. They had the very thing in view that appellee turned around and did, however much of good faith there may have been in his act in so doing.

[3] The appellee also points out that there was no averment of insolvency against him or of his inability to respond in damages for a breach of his contract. That is true, but, in the circumstances otherwise presented, it was neither an indispensable prerequisite, nor would that remedy have been a full and adequate one. It was alleged that appellant was dependent for its entire business upon that brought in by its drivers in its employ, one of its most valuable assets being the list of customers regularly called on by them and increased from time to time, it having been out much time and expense in having the drivers establish the routes and build up a clientèle along them for it; that the personal relations thus established between the drivers and the customers living on any particular route, owing to the nature of the busi-

ness itself, became such that the trade would go with the driver and he could control it as a personal asset; that this was peculiarly so in this instance, because of the fact that appellee had been both a stockholder in and an employee of appellant company in developing and building up the business in its behalf on the Montrose route; and that in consequence his driving and soliciting on it for any one else during the period he had so contracted not to would, in these peculiar conditions obtaining, not only deprive it of the business it was then doing thereon, but also prevent its future acquirement of any.

The evidence, without dispute, fully sustained all of these averments, thereby, we think, presenting an instance of a contract supported by a valuable consideration, having to do with a unique business, and so limited as to time and territory as to properly call for the aid of equitable restraint in its enforcement. Corpus Juris, vol. 13, p. 485, par. 428, footnotes 53–55, and cited authorities; also Patterson v. Crabb (Tex. Civ. App.) 51 S. W. 870, and Miller v. Chicago (Tex. Civ. App.) 195 S. W. 619, where the rule stated, although held inapplicable to the particular contract there involved, was recognized.

[4] Neither, in our opinion, is there any trenching here upon the policy against monopoly or undue restraint of trade reflected in our anti-trust statutes. While our courts will carefully scan the horizons of, and sniff the winds that blow about, transactions suspected of bearing that taint, they will in no wise be squeamish in declaring that only such reasonable restraint as this contract imposed did not bring it within that class; this for the reason that public policy is a principle that cuts both ways, and in its application the state must be just between the particular individuals concerned before it is solicitous for a remote general public, the rule being thus stated in Trust Co. v. Title Co., 248 F. 212, 160 C. C. A. 290:

"Before contracting parties can be absolved from their solemn obligations, on the ground that their contracts are invalid as creating a monopoly, it must be shown that their agreements are manifestly injurious to the public, for public policy is as much concerned in holding persons to their contracts as in prohibiting contracts in restraint of trade."

See, also, Patterson v. Crabb, supra; Gates v. Hooper, 90 Tex. 563, 39 S. W. 1079; Sherman v. Pfefferkorn, 241 Mass. 468, 135 N. E. 568; Srolowitz v. Roseman, 263 Pa. 588, 107 A. 322; Wilkinson v. Ebbets, 103 Misc. Rep. 324, 170 N. Y. S. 1041; American Ice Co. v. Lynch, 74 N. J. Eq. 298, 70 A. 138; Owl Laundry Co. v. Banks, 83 N. J. Eq. 230, 89 A. 1055; Eureka Laundry Co. v. Long, 146 Wis. 205, 131 N. W. 412, 35 L. R. A. (N. S.) 119; Langever v. United Advertising Co. (Tex. Civ. App.) 258 S. W. 856; Heinz v. National Bank

of Commerce, 237 F. 942, 150 C. C. A. 592; Schlag v. Johnson (Tex. Civ. App.) 208 S. W. 369.

There was not an intimation that this agreement in any way injuriously affected the public.

Further discussion is deemed unnecessary. Since our conclusion is that, under the pleadings and undisputed proof, appellant should have been awarded the relief it sought, the judgment appealed from is reversed, and the cause is remanded to the court below, with instructions to issue the temporary injunction as prayed for, upon appellant's giving such bond as the court may deem proper.

Reversed and remanded, with instructions.