### REEF v. MILLS NOVELTY CO.

### No. 2778.

Court of Civil Appeals of Texas. El Paso.

Feb. 2, 1933.

Rehearing Denied Feb. 23, 1933.

King S. Williamson and J. H. Synnott, both of Dallas, for plaintiff in error.

Tarlton Stafford and Seay, Seay, Malone & Lipscomb, all of Dallas, for defendant in error.

WALTHALL, Justice.

In this case Fred A. Reef, plaintiff in error, sued to have an accounting with Mills Novelty Company, defendant in error, and B. B. Moseley, and judgment for the amount found due. Moseley made no answer, the case went to trial as to Reef and Mills Novelty Company.

The case was submitted and tried in the district court upon an agreed statement of facts as between Fred A. Reef, plaintiff in error, and Mills Novelty Company, defendant in error, the only parties to this appeal.

The agreed statement is as follows:

"We, Fred A. Reef, plaintiff, and Mills Novelty Company, defendant in the above entitled and numbered cause hereby make the following agreement as to the facts in this case, inso far as the controversy between us is concerned and agree that the same covers all of the facts, and may be introduced in evidence as correctly stating the controversy between the parties hereto.

"It is agreed that during the year 1926 the defendant B. B. Moseley was in the employ of the defendant Mills Novelty Company as a salesman of the products of such company upon commission; that on or about December 31st, 1926, the said Moseley's account showed that his accrued commissions came to $1,031.48, and unaccrued commissions came to $630.35, as shown by itemized statement hereto attached, marked Exhibits A and A-1, mailed to the said Moseley by said Company about that time.

"It is agreed that some of the proceeds of sale upon which such commissions were owing were represented by notes due as late as August, 1928, and the company claimed the right, which is not contested, to defer settlement of Moseley's commission account till all said notes matured.

"It is further agreed that during the year 1926, and through the various dates herein mentioned, the said B. B. Moseley was employed by the said Mills Novelty Company under a written contract, true copy of which is hereto attached, marked Exhibit B, and expressly made a part hereof as completely as though set forth in detail herein.

"It is also agreed that on or about the various dates herein mentioned, the plaintiff Fred A. Reef was employed by the Mills Novelty Company under a similar contract, and that both of said contracts contained, among other provisions, the following provisions:

" 'In case of any termination of your services as a salesman in the capacity created by this contract, you will hereby authorize the company to pay and charge to your account your outstanding indebtedness incurred by you while so employed, providing of course, your account will warrant same; but the company shall not be called upon to pay such indebtedness unless it elects to do so; and the payment of your indebtedness by the company shall not raise any obligations on its part to pay the whole of said indebtedness. No assignment of your account, or any part of it, at any time, to be binding upon this company unless such assignment is accepted and acknowledged by the Company's treasurer.'

" 'It is further understood and agreed that should this contract be terminated at any time for any reason, said company shall proceed to collect the customers' accounts and charge back against said salesman's account the commissions upon such accounts as it shall be unable to collect, together with said salesman's proportional parts of the expense of the collection. This is to continue until a final account can be stated, and no money shall be due said salesman over this contract until such a final account can be stated.'

"It is further agreed by and between the parties, hereto, that on November 17th, 1926, Fred A. Reef wrote to the defendants Mills Novelty Company a letter, a copy of which is attached hereto and marked Exhibit C, expressly made a part hereof, and that the defendant Mills Novelty Company received said letter, and in a few days of the date thereof.

"It is further agreed that on or about the first day of April, 1927, when said account stood practically as shown by said statements, except for several small charges against it by the company, the said Moseley executed and delivered to said Reef an assignment of such account in words and figures as shown by duplicate copy thereof, attached hereto and marked Exhibit D; that on the 11th day of April, 1927, King S. Williamson attorney for said Reef, mailed a copy of such assignment, that is, duplicate original thereof, to the defendant Mills Novelty Company, addressed to it at Chicago, Illinois, with a letter calling its attention thereto; that said letter and said assignment were received by the company, and on the 14th day of April, 1927, it was returned by the company to the said attorney, King S. Williamson, with a letter, copy of which is hereto attached and marked Exhibit E; that thereafter, said account all matured, and, by deductions and charges, was reduced to the amount of $1,401.29, which sum it is hereby agreed represents

the entire amount due the said Moseley under his contract with the Mills Novelty Company in November of 1928. It is agreed that in November of 1928, such sum was paid to the defendant B. B. Moseley, as shown by itemized statement hereto annexed, marked Exhibit F, and that no part of it has been paid to the plaintiff Fred A. Reef by the defendant Mills Novelty Company.

"It is agreed that the consideration paid by Fred A. Reef for the assignment from B. B. Moseley was cash which the said Reef from time to time paid and advanced to the said Moseley on his commissions, claimed to be coming from Mills Novelty Company, amounting in the aggregate to several hundred dollars, and that Reef has never been repaid any part of that money.

"It is further agreed that there is in the contract under which the said Moseley and under which the said Reef operated as salesmen of the defendant Company, the following provision:

" 'If any question arises as to the validity interpretation or performance of this contract in any court of the United States, or foreign country, it is agreed that the law of the State of Illinois shall govern, without reference to the place of execution or performance of same.'

"And that the contracts of both the said Moseley and the said Reef also contain this provision which appears in said contracts, after the signature or signatures of the official or officials of the Mills Novelty Company, and directly above the signatures of the said Moseley and the said Reef to said contracts:

" 'I have carefully read and fully understand each and every provision of this contract and do hereby accept and agree to the same; I understand that the violation of any of the terms contained in said contract by me or my failure to comply with all the provisions of said contract annul all my rights in said contract at the option of the company without notice.'

"It is further agreed that if it should become material to ascertain the law of Illinois, any printed volumes of statutes and reports commonly recognized in Dallas as authentic may be resorted to, cited and/or consulted without actually proving such statutes or law as a fact.

"It is further agreed that such contracts were written by the defendant company and executed by it and the said Reef and the said Moseley.

"It is further agreed that this stipulation covers all of the facts and that no other evidence will be introduced insofar as the controversy between the said Fred A. Reef and the said Mills Novelty Company is concerned.

"In witness whereof, this agreement has been executed on behalf of the said Reef and of said Mills Novelty Company by their respective attorneys of record, this the 30th day of July, 1931."

The statement refers to certain exhibits which are in the record, and, where necessary, we will refer to the exhibit as a part of the agreed statement of facts. The agreed statement of facts, with the exhibits, were offered as the evidence in the case. No question is made but that the pleadings of the parties were sufficient to tender the issues of fact embraced in the agreed statement of facts.

In the judgment the court concluded that the law was with the Mills Novelty Company, and ordered that Reef take nothing as to it, and as to Moseley the court found and assessed the damages at the sum of $1,401.29, and entered judgment for Reef against Moseley for said sum, with interest.

From the judgment so entered Reef duly prosecutes this appeal.

### Opinion.

The agreed statement of facts shows that on April 1, 1927, B. B. Moseley, an employee of Mills Novelty Company, for a valuable consideration paid to him by Fred A. Reef, assigned to Reef his then earned commissions represented and expressed by an account against the Mills Novelty Company, properly itemized by an exhibit annexed to and made a part of the assignment, and which assigned account the trial court found amounted to the sum of $1,401.29, and upon which amount the court allowed interest from May 1, 1927, or a total to the time of the trial of $1,780.

The agreed statement shows that Moseley's commissions assigned to Reef were earned under a written contract with Mills Novelty Company, and which contract contained the following provision: "No assignment of your account, or any part of it, at any time to be binding upon this company, unless such assignment is accepted and acknowledged by the company's treasurer."

Such assignment of the account or any part of it had not been accepted and acknowledged by the company's treasurer.

After such assignment had been made, Mills Novelty Company was notified of such assignment, and, after such notice, it paid to Moseley the amount of such assigned account, and refused to pay to Reef on demand all or any part of it.

Plaintiff in error has submitted a number of propositions and subpropositions, all in effect complaining of the judgment of the trial court holding that the above-quoted provision in the contract between the Mills Novelty Company and B. B. Moseley, no assignment of Moseley's account with the company should be binding upon the company without the company's acceptance and acknowledgment of such assignment, was a valid defense on the part of the company against Reef's claim.

The only question we think to discuss is: Was the inhibition in the contract against an assignment of the accounts a valid provision? If it was valid, the Mills Novelty Company had a right to stand upon it, and, if not valid, it would be no defense against Reef's claim.

■■ In the absence of a contract inhibition, the earned and open account being a species of property, and Moseley having a present interest in it, it was assignable without the consent of the debtor, the company. There was at the time of the assignment vested in Moseley a right to enforce payment by suit in his own name. Any species of property, in fact everything that may be called a debt, as a general rule, may be assigned. The Texas courts have broadly stated that "any species of property," "everything that may be called a debt," may be assigned. Texas Jurisprudence, vol. 5, par. 6 et seq. and the cases referred to. Certainly the statutes of this state do not require the consent or acceptance of the debtor of the kind of account we have here to give validity to the assignment. The general rule in this state is that the consent or acceptance of the debtor is not essential to the validity of an assignment. We do not understand defendant in error as controverting the above, as a general rule. We think the account of Moseley, with the Mills Casualty Company, except for the contractual inhibition, was assignable, and the only question to be discussed is as to the exception to the general rule above stated, that is: Does the provision in the contract as above render the assignment of the account invalid as to the company without acceptance by the company of such assignment? We have not found a Texas case on the question presented. Corpus Juris, vol. 5, p. 937, par. 98, under the subject "Assignments" discussed, says: "As a general rule, the consent or acceptance of the debtor is not essential to the validity of an assignment either as between the parties or as against the debtor." And in support of the general rule as stated under note 64 refers to many cases from other states, including Texas, and to which we refer without stating them here. As a part of the same paragraph, it is further said: "Exceptions. Such consent or acceptance is necessary, as against the debtor, however, in the case of a partial assignment, except, in some jurisdictions, in equity, or where the parties to the contract under which the right arises have stipulated that neither the contract nor any right thereunder shall be assignable without the consent of the other party, or where the contract is of such a nature that it is not assignable."

Many cases from other states are referred to under the exception to the general rule.

■ As suggested by defendant in error, our Texas statute does not forbid a contractual provision limiting the right of assignment, nor abrogate the right of parties to a contract to agree upon such lawful restrictions as they might desire; that, as said in Parisian Live Dyers & Cleaners v. Springfield (Tex. Civ. App.) 275 S. W. 1098, public policy is as much concerned in holding persons to their contracts as it is in prohibiting contracts on account of some fancied restraint.

The following cases, as we construe them, all hold that parties may validly prohibit assignment of moneys due under a contract: Stanley v. Sheffield L., I. & C. Co., 83 Ala. 261, 4 So. 34; Barringer v. Bes Line Const. Co., 23 Okl. 131, 99 P. 775, 21 L. R. A. (N. S.) 597; Arkansas Valley Smelting Co. v. Belden Min. Co., 127 U. S. 379, 8 S. Ct. 1308, 32 L. Ed. 246; City of Omaha v. Standard Oil Co., 55 Neb. 337, 75 N. W. 859; State ex rel. K. C. Loan Guarantee Company v. Kent, 98 Mo. App. 281, 71 S. W. 1066; Tabler v. Sheffield L., I. & C. Co., 79 Ala. 377, 58 Am. Rep. 593; Mueller v. Northwestern University, 195 Ill. 236, 63 N. E. 110, 88 Am. St. Rep. 194; 2 R. C. L. p. 598, par. 6, note 11.

We do not understand the case of Portuguese-American Bank v. Welles, 242 U. S. page 7, 37 S. Ct. 3, 61 L. Ed. 116, Ann. Cas. 1918D, 643, referred to by plaintiff in error, as holding differently.

Other propositions not discussed have been considered and are overruled.

The case is affirmed.