**Opal Loraine WILLIAMS, Appellee,**

v.

**Mary Beth WILLIAMS and J. David Williams, personally and as trustees of the J.U. Williams Revocable Trust of June 15, 1989, Appellants.**

**No. 75638.**

Court of Appeals of Oklahoma, Division No. 2.

Feb. 17, 1993.

Certiorari Denied April 27, 1993.

James R. Rodgers, Blackwell, for appellee.

D.W. Falkenberg, Miles Halcomb, Medford, for appellants.

BRIGHTMIRE, Judge.

The question presented here is whether the trial court erred in concluding that a certain certificate of deposit, payable to the plaintiff's late husband or his daughter, was a product of marital joint industry entitling the widow to one-half of its proceeds.

We answer in the affirmative.

### I

The operative facts are not in dispute. This action was instituted by Opal Loraine Williams against two of her deceased husband's children, Mary Beth Williams and J. David Williams, to establish a "surviving spouse" right to certain property once owned by her late husband, J.U. Williams. On September 18, 1983, J.U. took the plaintiff as his third wife, at the mature age of seventy-eight years. No children were born of the marriage although both partners had children by their previous marriages—Loraine two and J.U. seven.

When J.U. married Loraine he possessed quite a bit of separate property.[1] Among other things he owned a house in Tonkawa, Oklahoma, held in joint tenancy with his former wife, Dorothy. In 1985, following Dorothy's death, J.U. had the joint tenancy judicially terminated and then deeded the property to his daughter, Mary Beth Williams. She later sold the property and carried a note secured by a mortgage from the buyer. J.U. also had a checking account at the First National Bank of Tonkawa to which he added Mary Beth as a joint tenant in 1981. In addition to these assets, the deceased owned some certificates of deposit held in the name of J.U. and Mary Beth as joint tenants, one of which was Certificate No. 9035 issued by the Security Bank & Trust Company, Blackwell, Oklahoma, to J.U. or Mary Beth payable to the "survivor or survivors." It is this certificate that was later superseded by what the widow, Loraine, admitted to be "rollover" Certificate No. 17495, which is the subject of this appeal.

J.U. died May 29, 1989. Mary Beth placed the jointly held property in a revocable trust on June 15, 1989, allegedly to be distributed by her and her co-trustee brother pursuant to written instructions left by J.U. On October 9, 1989, Loraine filed this lawsuit alleging that J.U.'s disposition of his separate property was fraudulent as to her rights of inheritance as surviving spouse under 84 O.S.1991 § 213. She asked the court to decree that she possessed a one-half interest in all property jointly acquired during her marriage to J.U., and a one-eighth interest in his remaining separate property.[2]

■ J.U.'s children answered, denying that any of J.U.'s conveyances or transfers were fraudulent or that Loraine was enti-

---

1. The fact is that both parties possessed significant separate property acquired during previous marriages.

2. She also attached to her petition an exhibit which she alleged was a copy of J.U.'s handwritten instructions as to how to distribute his estate. The document, dated September 1, 1988, was not offered as and did not legally qualify as a valid will. In it J.U. requested that his children be given certain amounts of money and the plaintiff be given $1,500 along with a "little car." She alleges the requested distribution is fraudulent as to her.

tled to any interest therein. On March 14, 1990, Loraine filed an amended petition which, so far as we can find, was without leave of court.[3]

On April 19, 1990, following a bench trial, the court found the issues generally in favor of the children except as to Certificate of Deposit No. 17495. The trial court found that this certificate, payable to J.U. or Mary Beth, was "joint industry property" and consequently ordered Mary Beth and David, individually or as trustees, to deliver one-half of the proceeds "of certificate of deposit # 17495" to Loraine forthwith, otherwise he would grant Loraine judgment for $12,500 against the children.

The children appeal claiming the ruling with respect to Certificate No. 17495 is contrary to both the facts and the law. Loraine does not counterappeal.

## II

The contention advanced by J.U.'s children is that Certificate No. 17495 was their father's separate property and at his death was held by him and Mary Beth as joint tenants.

Loraine disagrees and contends that the language of 60 O.S.1991 § 74, defining joint interest, states that joint title can be "created by a single instrument, will or transfer when expressly declared in the instrument, will or transfer to be a joint tenancy." She argues that subject certificate "does not expressly declare a joint title" and there is otherwise no evidence of action by J.U. showing an intention to create a common-law joint interest or tenancy in common. Instead she says that marital joint industry increased the value of J.U.'s separate property by an amount essentially equivalent to the value of subject certificate for which she is entitled to one-half of its value.[4]

In support of her argument Loraine cites *Hendricks v. Grant County Bank,* 379 P.2d 693, 696 (Okl.1963), and emphasizes a general statement made by the court to the effect that merely making a certificate payable to John Doe or Richard Roe "did not of itself have the force and effect of creating a joint tenancy with right of survivorship." The trouble is that Loraine overlooks the very important words "did not of itself" in the statement, and fails to consider the court's further elaboration on the critical phrase or its ultimate holding. For, had she examined *Hendricks* further, she would have discovered that the court held that a joint tenancy *was* created by the certificate of deposit's recitation that "Mattie Mae Hendricks has deposited in this bank payable to the order of herself, or David C. Hendricks." The high court's rationale was that such words are sufficient to establish a joint tenancy *if* there is "proof of facts and circumstances evidencing an intelligent intention on the part of the person whose funds were invested in the certificate to create a condition embracing the essential elements of joint ownership with right of survivorship."

---

**3.** The pleading "is without effect" according to *Hunter v. Echols,* 820 P.2d 450 (Okl.1991), notwithstanding the fact that the children later filed an answer to it with leave of court.

**4.** In order for one spouse to receive a marital interest in the separate property of the other, it must be shown that the non-owning spouse made a positive contribution which enhanced the value of the separate asset. Here the contribution which Loraine says she made—furnishing a home for the parties—is at most a passive, indirect and inactive one. Aside from the fact that J.U. made a substantial contribution in improving Loraine's house and keeping it in repair, she received a substantial benefit from the interest earned by CD No. 9035 which was used to help pay household expenses. Moreover, J.U. spent another $15,000 of his separate

funds to buy a new car which he put in both their names. So what we have left is simply the rollover principal of CD No. 17495, namely, $25,000, which existed prior to the marriage and which remained unenhanced by any contribution of Loraine at the time of J.U.'s death.

In this regard, Loraine concedes that to achieve marital asset status the "direct result of substantial contribution by the [non-owning] spouse of effort, skill or funds" and not merely an enhanced value or increase of a spouse's separate property due solely to economic conditions or circumstances external to the marriage. *Templeton v. Templeton,* 656 P.2d 250 (Okl. 1982). Here there is no evidence that Loraine substantially contributed any effort, skill or funds to increasing the $25,000 principal value of CD No. 17495.

An even more expository examination of the subject was undertaken in *Raney v. Diehl*, 482 P.2d 585 (Okl.1971). After reviewing the case law of this state, including *Hendricks*, the supreme court concluded in its syllabus 1 that a "joint tenancy with right of survivorship in personal property may be created either by written instrument in compliance with 60 O.S. [1991] § 74, or by proof of facts and circumstances on part of that person whose funds are invested in a certificate of deposit, evidencing an intelligent intention to create a condition embracing essential elements of joint ownership with right of survivorship in other person named."

Here all the facts and circumstances point to an intention on the part of J.U. to create a joint tenancy relationship with his daughter, Mary Beth, with respect to all of his separate property, including subject note. Loraine did not dispute testimony that prior to the marriage she and J.U. met with Mary Beth and another sibling to announce that they "were in total agreement" that "their properties would remain separate" so the estate of each would pass to their respective children. In fact, Loraine reportedly said that "in all probability they would not even have a joint checking account." And after the marriage J.U. and Loraine conducted their affairs consistent with such an intention.[5]

It is particularly significant that Certificate No. 17495 was a partial rollover of an earlier certificate, No. 9035, which expressly alluded to the survivorship interest of each party. These are strong indicia of J.U.'s intent. And further supporting this conclusion is the fact that there is no evidence, direct or indirect, that the bank was ever instructed to extinguish the joint tenancy relationship J.U. expressly created when he bought Certificate No. 9035 and arranged for the rollover. Indeed, there is no evidence either tenant ever did anything

to alter the ownership established in CD No. 9035.

### III

Having reached the conclusion that subject CD was held by J.U. and Mary Beth as joint tenants, it follows that Mary Beth became its sole owner upon the death of J.U. We hold, then, that the trial court erred in awarding the widow one-half of Certificate No. 17495. That portion of the judgment appealed which finds Certificate of Deposit No. 17495 to be the product of joint industry and orders the trustees to deliver one-half of its $25,000 face value to Loraine, or else a judgment of $12,500 would be granted to Loraine against the children, is reversed. The judgment as modified is affirmed and the cause is remanded with directions to enter judgment accordingly.

Affirmed as modified and remanded with directions.

RAPP, P.J., and BOUDREAU, J., concur.

---

5. For example, the couple never did open a joint checking account but both parties—and their estates—benefitted equally from the cost-sharing arrangement by which they lived and for which J.U. used the interest income generated by his CDs. The major deviation from the arrangement occurred when, according to Loraine, J.U. used the income he had received from renting his home to purchase the $15,000 Buick he placed in the names of "J.U. or Loraine Williams" *thus sharing with Loraine any disproportionate benefit he received from living in her home after the marriage.*