2010 OK CIV APP 83

**David S. FRIEDMAN, Plaintiff/Appellee,**

v.

**Steven Lee CRAIG, an individual, d/b/a City Properties and d/b/a Craig Real Estate Services, Defendant,**

**and**

**Florence Louise Gavigno, Defendant/Appellant.**

**No. 106,614.**

Court of Civil Appeals of Oklahoma, Division No. 1.

Aug. 6, 2010.

NHCA. 63 O.S.2001, § 1–890.6(D). No similar provision exists for Assisted Living Facilities.

Ruston C. Welch, WELCH LAW FIRM, P.C., Oklahoma City, OK, for Plaintiff/Appellee.

Holly Hefton, HOLLY HEFTON, P.C., Oklahoma City, OK, for Defendant/Appellant.

WM. C. HETHERINGTON, JR., Judge.

¶1 Defendant Florence Louise Gavigno (Appellant) appeals the trial court's denial of her motion to vacate the summary judgment entered in favor of Plaintiff David Friedman (Appellee) and against Appellant. Finding no abuse of discretion, the order is **AFFIRMED.**

### STANDARD OF REVIEW

¶2 Appellant filed her Petition in Error December 10, 2008, indicating the appealable order is "November 10, 2008," the filing date of the trial court's order denying Appellant's motion to vacate the trial court's order disposing of Friedman's summary judgment motion. Because Appellant filed her post-trial motion more than 10 days but less than 30 days after the filing of that judgment, this appeal is limited to the trial court's order disposing of Appellant's "term-time motion to vacate." [1] *Kordis v. Kordis,* 2001 OK 99, ¶6, 37 P.3d 866, 869. We review such orders to determine whether

sound discretion was exercised upon sufficient cause shown to refuse the relief sought. *Id.* "An abused judicial discretion is manifested when discretion is exercised to an end or purpose not justified by, and clearly against, reason and evidence." *Patel v. OMH Medical Center, Inc.,* 1999 OK 33, ¶20, 987 P.2d 1185, 1194.

### FACTS

¶3 Friedman, a resident of California and owner of commercial property in Oklahoma, filed a petition in January 2007, alleging numerous causes of action including embezzlement against Appellant's son, Steven Lee Craig, who had managed Friedman's property until September of 2006, and a single cause of action of "fraudulent conveyance" against Appellant. Under the latter, Friedman claimed Craig and Appellant had owned their residence as joint tenants with rights of survivorship until Craig executed a quit claim deed in October 2006 transferring his interest to Appellant without value, at a time Craig was insolvent and when Appellant knew or had reasonable cause to believe he was insolvent.

¶4 Counsel, who had entered an appearance for both defendants and filed an answer on behalf of Appellant,[2] moved to withdraw as her attorney of record on July 22, 2008, alleging Appellant's failure to communicate and to provide documents requested by Friedman. On the same date, Appellant's

---

**1.** Appellant's motion to vacate was filed September 29, 2008, which is more than 10 days but less than thirty days from the filing of the trial court's "Journal Entry of Judgment Against [Appellant]" on September 5, 2008. Decisions sustaining a motion for summary judgment and refusing to vacate that judgment are both final, appealable orders. *Presbyterian Hospital, Inc. v. Board of Tax–Roll Corrections of Oklahoma County,* 1984 OK 93, ¶13, 693 P.2d 611, 614. As a timely term-time motion, the trial court's authority/power to vacate in this case was not restricted to any specific § 1031.1 ground. *Schepp v. Hess,* 1989 OK 28, ¶8, 770 P.2d 34, 38.

**2.** This information is obtained from the certified appearance docket in the record because the only instrument included in the appellate record between Friedman's Petition and a Scheduling Order filed March 7, 2008 is a judge-signed or-

der filed February 23, 2007 allowing the withdrawal of the attorney of record for *Craig.* · The docket's last reference to Craig is an "Affidavit of Steven Lee Craig In Answer To Claim Of Fraudulent Conveyance" filed on March 2, 2007, which is not included in the record. The remaining reference in the record about Craig is in Friedman's Motion for Summary Judgment, which states Craig filed a Chapter 7 Bankruptcy Petition on March 25, 2008 and attached supporting documents. Appearance dockets, which cannot be accepted by a reviewing court as a proper substitute for the judge's memorialized entry of judgment, of orders, or of any proceedings occurring at nisi prius, may be used to inform the appellate court about filings effected and about scheduled *nisi prius* events. *Hammonds v. Osteopathic Hospital Founders Association,* 1996 OK 100, n. 20, 934 P.2d 319, 323.

counsel mailed a copy of the motion to Appellant and Friedman's counsel, from whom Appellant's counsel had previously sought approval. Three days later, July 25, 2008, Friedman's counsel filed a motion for summary judgment against Appellant only, set the hearing for September 5, 2008, and served the motion on Appellant's counsel.[3]

¶ 5 Appellant did not attend the hearing on her attorney's motion to withdraw August 22, 2008, and having no objections, the trial court approved that order. Appellant's now former counsel mailed a copy of the order to Appellant with which she enclosed a letter dated August 25, 2008, explaining her options to prevent default judgment and loss of her home.[4] Appellant received the order and notice "on or about August 26, 2008."

¶ 6 No response or objection to Friedman's summary judgment motion was filed within fifteen days of its service or prior to the September 5, 2008 hearing, at which only Friedman's counsel attended. In the Journal Entry of Judgment filed September 5, 2008, the trial court granted, in relevant part,[5] judgment in favor of Friedman and against Appellant and certified the order as final pursuant to 12 O.S.2001 § 994(A).[6]

¶ 7 Appellant received the September 5, 2008 Judgment "on or about September 6, 2008." Shortly thereafter, she obtained new counsel, who filed on September 29, 2008, a motion to vacate the September 5, 2008 Judgment, citing "12 O.S.2001 § 1031.1" as authority. The motion included affidavits to support Appellant's defense against a fraudulent conveyance, i.e., the transfer of the joint tenancy interest in Appellant's home to Craig in 2001 was an estate planning device neces-

sitated by her heart surgery and a concurrently-executed second deed, which would have transferred Craig's interest back to Appellant. The affidavit swore this deed was lost and never filed, requiring Craig's execution of the 2006 quit claim deed.

¶ 8 Friedman opposed the motion, arguing, inter alia, Appellant's motion was void of any § 1031.1 ground and also failed to state sufficient cause to justify exercise of the trial court's term-time power. A hearing was held October 31, 2008, subsequent to which the trial court filed an Order on November 10, 2008, denying Appellant's motion to vacate. Her appeal followed.

## ANALYSIS

¶ 9 In her single proposition of error, Appellant argues the trial court should have vacated the September 5, 2008 Judgment due to an "irregularity in obtaining a judgment," as permitted by 12 O.S.2001 § 1031.1(3). She contends the "irregularity" occurred when "the trial court entered judgment against her by default, due to her failure to respond to Friedman's motion for summary judgment or to appear at the hearing held on that motion." She further argues Friedman "obtained a default [judgment] against an unrepresented person who was under the belief she had until September 21st to hire an attorney."

¶ 10 Appellant's latter statement is technically accurate as to her status on September 5, 2008, however, her position that a "default judgment" was entered against her lacks both legal and record support. It is undeniable that default judgments are disfavored,

---

3. July 25, 2008 was the deadline for dispositive motions set by the Scheduling Order filed March 7, 2008.

4. Noting first the enclosure of the order allowing her withdrawal, she then instructed Appellant:

   You must do one of the following things within 30 days of the date of the order:
   1. Hire an attorney
   2. File for Bankruptcy protection.
   3. Enter your appearance as representing yourself.
   If you fail to do any of these things, default judgment may be entered against you and you may lose your home.

5. The trial court found the transfer of Craig's joint tenancy interest in the residential property to Appellant was a fraudulent transfer as to Friedman and that at the time of the transfer Friedman was a creditor of Craig. The trial court granted Friedman "a judgment in rem against [Appellant] and the joint tenancy with right of survivorship interest" in the amount of $143,845.16, plus pre-judgment interest from September 1, 2006 and post-judgment interest until paid. Friedman was also awarded $349.00 costs and $12,500 attorneys fees.

6. The trial court specifically found "there is no just reason for delay of entry of this Judgment."

but as Appellant's sole authority also recognizes, "vacation of a default judgment is different from vacation of a judgment where the parties have had at least one opportunity to be heard on the merits." *Ferguson Enterprises, Inc. v. H. Webb Enterprises, Inc.,* 2000 OK 78, ¶ 5, 13 P.3d 480, 482.

¶ 11 "The granting of a summary judgment motion on the merits of a cause of action is an adjudication on the merits *even when* no response is made to the motion." *Union Oil Company v. Board of Equalization,* 1996 OK 40, ¶ 12, 913 P.2d 1330, 1334. In contrast, a default judgment pursuant to District Court Rule 4, to which we presume Appellant's argument refers, is granted simply for a failure to respond. *Id.,* at ¶ 13.

¶ 12 A trial court cannot grant summary judgment simply because it is unopposed; it must examine whether the materials offered substantiate granting judgment for the moving party. *Id.* Our review of the face of the September 5, 2008 Judgment finds Appellant "was properly served with this Motion through [Hefton], and has wholly failed to answer [Friedman's] Motion and is thus in default." However, the same judgment also expressly finds the trial court examined the file and that "[Friedman's] motion for summary judgment is meritorious." The presence of such rulings distinguishes an order granting summary judgment from one granting a default judgment. *Id.; see also Sandusky v. Graham and Associates, Inc.,* 1988 OK CIV APP 14, 766 P.2d 370. We decline to characterize the September 5, 2008 Judgment as a default judgment, and because the issue of a substantial hardship has only been considered by this Court when reviewing the grant or denial of a motion to vacate a default judgment, we need not consider that issue here. *Ferguson Enterprises, Inc., supra* at ¶ 5.

¶ 13 Furthermore, "irregularity," as used in § 1031.1, generally relates to the existence of a serious jurisdictional defect, such as lack of service, notice or jurisdiction of either the parties or subject matter, *not* to the substance of the order. *Board of Trustees of the Town of Davenport v. Wilson,* 1998 OK CIV APP 4, ¶ 3, 953 P.2d 764, 765. A defendant's failure to respond to a lawsuit after proper notice does not present an "irregularity" so as to permit vacation of a judgment or order. *Id.*

¶ 14 Appellant's affidavit attached to the motion to vacate states "until [she] received the [September 5, 2008 Judgment], [she] had *no knowledge* that a hearing on the Motion for Summary Judgment had been scheduled." (Emphasis added.) However, the evidence presented to the trial court during the vacation proceedings regarding the notice provided to Appellant demonstrates (1) within the same week Friedman's motion for summary judgment was filed on July 25, 2008 and served on her, Appellant's former counsel forwarded the motion to Appellant, and (2) the hearing date and time for that motion, September 5, 2008 at 10 a.m., and the judge's name were clearly marked on the front. As a result, the record on appeal does not establish a § 1031.1(3) "irregularity in obtaining a judgment" that justifies vacating the September 5, 2008 Judgment or that the trial court abused its discretion by refusing to vacate that Judgment. The order is **AFFIRMED.**

BUETTNER, P.J., and HANSEN, J., concur.