2014 OK CIV APP 21

**FIRST PRYORITY BANK, an Oklahoma Banking Corporation, Plaintiff/Appellee,**

v.

**Donald M. MOON, an individual, and NLCO, Inc., Defendants/Appellants,**

**Randall Brown, Intervenor/Appellant,**

**The Board of County Commissioners of Tulsa County, and the Tulsa County Treasurer, Defendants.**

No. 111206.

Court of Civil Appeals of Oklahoma, Division No. 1.

Sept. 27, 2013.

Certiorari Denied Feb. 18, 2014.

Joseph L. Hull, III, Joseph L. Hull, P.L.L.C., Tulsa, Oklahoma, for Appellants.

Wm. Brad Heckenkemper, Barrow & Grimm, P.C., Tulsa, Oklahoma, for Appellee.

LARRY JOPLIN, Chief Judge.

¶ 1 Defendants/Appellants Donald M. Moon, an individual, NLCO, Inc. (collectively, Moon), and Randall Brown (Brown, or, collectively with Moon, Appellants) seek review of the trial court's orders denying Moon's motion to vacate, Moon's objections to execution and Brown's motion to intervene in the action of Plaintiff/Appellee First Pryority Bank, an Oklahoma Banking Corporation (Bank), to collect on a promissory note and foreclose a mortgage. Appellants assert the trial court erred in denying Moon's motion to vacate, and in denying Moon's objection to execution. Appellants also assert the trial court erred in denying Brown's motion to intervene as assignee of Moon's "choses in action."

¶ 2 We hold the trial court did not abuse its discretion in denying Moon's motion to vacate. Moon's claims, counterclaims, and choses in action were subject to execution, and Bank, as purchaser of Moon's claims, counterclaims and choses in action at sheriff's sale, permissibly dismissed those claims. The trial court did not err in denying the objections to execution, and did not err in denying Brown's motion to intervene. The orders of the trial court are therefore affirmed.

¶ 3 According to Moon, this case represents one of seventeen actions commenced against him by Bank to collect on notes and foreclose mortgages. To better understand the present case, and because of a common issue, we first summarize the proceedings in three of the other cases commenced by Bank against Moon.

## I. RELATED CASES

### A. Case No. CJ–2008–1268

¶ 4 From a review of the trial court docket, it appears that, on February 19, 2008, Bank commenced an action against Moon, assigned Tulsa County District Court Case No. CJ–2008–1268. Bank alleged that, on or about June 23, 2006, Moon executed a two-year promissory note payable to Bank in the principal sum of $352,029.32, with interest at a variable rate, secured by a mortgage on fifteen residential lots in the Glens Phase I, a subdivision in the City of Sand Springs, Tulsa County, Oklahoma, that Moon defaulted in payment on the note, and there remained a past due unpaid balance owing by Moon. Bank prayed for judgment on the note with interest accrued and accruing, foreclosure of

the mortgage by sheriff's sale, and application of the proceeds to satisfy the debt.

¶ 5 It further appears from the trial court docket that Moon filed an amended answer on June 23, 2009. Moon asserted counterclaims for deceit and breach of duty of good faith on the allegation of Bank's intentional conduct to devalue the security and induce his default, and violation of the parties' alleged agreement entered in January 2008, for which he sought actual and punitive damages.

¶ 6 On September 14, 2010, Bank obtained judgment against Moon in trial court Case No. CJ–2008–1319, the subject of the present appeal.[1] In post-judgment collection proceedings, Bank obtained a writ of execution upon Moon's defenses, claims and counterclaims asserted in this case, No. CJ–2008–1268. Bank purchased those rights at sheriff's sale on October 2, 2012, and subsequently dismissed Moon's claims and counterclaims with prejudice. As near as we can tell, this case remains pending.

### B. Case No. CJ–2008–1270— Appeal No. 111,333

¶ 7 Also on February 18, 2008, Bank commenced another action against Moon in the trial court, assigned Tulsa County District Court Case No. CJ–2008–1270. Bank alleged that, on or about April 27, 2006, Moon executed a one-year promissory note payable to Bank in the principal sum of $123,240.11, with interest at a variable rate, secured by a mortgage on four other residential lots of the Glens Phase I subdivision, that Moon defaulted in payment, and there remained a past due unpaid balance owing by Moon. Bank prayed for judgment on the note with interest accrued and accruing, foreclosure of the mortgage by sheriff's sale, and application of the proceeds to satisfy the debt.

¶ 8 By amended answer filed April 9, 2009, Moon alleged the existence of an executed agreement with Bank and another lender, "consummated" by e-mail January 7, 2008, calling for Moon's payments toward unpaid interest, in consideration for additional financing from the other lender to retire the debts to Bank, and Bank's breach of the agreement by misapplication of Moon's payments, resulting in failure of the additional financing.[2] Moon asserted counterclaims for deceit and violation of duty of good faith and fair dealing implicit in the subsequent agreement, and claimed actual and punitive damages.

¶ 9 However, as we have previously noted, Bank in September 2010 obtained judgment against Moon in trial court Case No. CJ–2008–1319, the subject of the present appeal.[3] Moon filed a motion to vacate, and objection to execution, which the trial court denied. Bank obtained a writ of execution upon Moon's defenses, claims and counterclaims asserted in Case No. CJ–2008–1268,[4] Case No. CJ–2008–1270, and Case No. CJ–2008–1319, the subject of the present appeal. Bank purchased the defenses, claims and counterclaims at sheriff's sale October 2, 2012 and, in Case No. CJ–2008–1268 and this case, subsequently dismissed the counterclaims with prejudice.

¶ 10 On October 12, 2012, Bank then filed its motion for summary judgment in this case. Upon Moon's failure either to object to Bank's Motion for Summary Judgment

---

1. Section II, Case No. CJ–2008–1319, Appeal No. 111,206, *infra.*

2. Particularly, Moon alleged "Capital Direct Lending was engaged ... to remove all loans made to [Moon] by [Bank] ... through loans by and through Capital Direct Lending," that "discussions regarding the removal of all loans ... were consummated with an agreement between [Moon], [Bank] and [Capital Direct Lending] on January 7, 2008," "[t]he agreement provided for the early withdrawal of two (2) certificates of deposit in the amounts of $51,809.42 and $52,140.95 which were pledged by [a Moon entity] to secure loans," "[i]n addition, [another Moon entity] was required to pay $24,072.03 by

cashiers check," such sums to be applied "to [Bank's] loans," "all requirements of the borrowers were fully completed and accepted by plaintiff [B]ank," but that "the plaintiff [B]ank unilaterally breached the fully executed agreement with all participating entities by applying the certificate of deposit proceeds to only two (2) loans [and] did not return, remit or account for $24,072.03 paid ... thereby leaving fifteen of the seventeen loans in default."

3. Section II, *infra.*

4. Section I.A., *supra.*

"within the time specified," or to present "any admissible evidence to dispute [Bank's] claims or support [their] counterclaims as a defense to [Bank's] Motion," and recognizing "Defendants' counterclaims have been dismissed with prejudice," the trial court granted judgment to Bank on its claims for collection of the note, and foreclosure of the mortgage by Journal Entry of Judgment filed November 13, 2012. On December 13, 2012, Moon filed his Petition in Error in the Supreme Court to commence Appeal Case No. 111,333. The Supreme Court denied Moon's post-appeal motions to stay execution, the mortgaged property sold at sheriff's sales in February 2013, and the trial court confirmed the sales in August 2013.

### C. Case No. CJ–2008–1272— Appeal No. 111,229

¶ 11 On February 18, 2008, Bank commenced yet another action against Moon, assigned Tulsa County District Court Case No. CJ–2008–1272. Bank alleged that, on or about January 24, 2007, Moon executed a one-year promissory note payable to Bank in the principal sum of $176,577.32, with interest at a variable rate, secured by a mortgage on a single residential lot of the Glens Phase I subdivision, that Moon defaulted in payment, and there remained a past due unpaid balance owing by Moon. Bank prayed for judgment on the note with interest accrued and accruing, foreclosure of the mortgage on real property by sheriff's sale, and application of the proceeds to satisfy the debt.

¶ 12 By amended answer filed December 5, 2009, Moon alleged that Bank "engaged in a course of conduct intended to devalue the collateral pledged by the defendants to secure the promissory note and intended to place the defendants in default of the subject note." Moon further alleged Bank "breached its duty of good faith and fair dealings and engaged in conduct contrary to an agreement entered into on January 7th, 2008,"[5] and asserted counterclaims for deceit and breach

of duty of good faith to recover actual and punitive damages.

¶ 13 As we have previously noted, however, in September 2010, Bank obtained judgment against Moon in the present appeal, trial court Case No. CJ–2008–1319.[6] In January 2012, Bank issued a writ of execution upon Moon's counterclaims asserted in this case, No. CJ–2008–1272, and purchased the counterclaims at sheriff's sale January 17, 2012.

¶ 14 On March 8, 2012, Bank dismissed Moon's counterclaims with prejudice in this case. On the same date, Bank filed a motion for summary judgment, and Moon filed his response to Bank's motion for summary judgment on May 29, 2012. The mortgaged property sold at a tax sale on June 13, 2012.

¶ 15 By Journal Entry of Judgment filed October 10, 2012, the trial court granted judgment on the note to Bank against Moon personally. On November 9, 2012, Moon filed his Petition in Error in the Supreme Court to commence Appeal Case No. 111,229.

### II. The Present Case—Case No. CJ– 2008–1319–Appeal No. 111,206

#### A. Statement of the Case

¶ 16 On February 20, 2008, Bank commenced the instant action against Moon in the trial court, assigned Tulsa County District Court Case No. CJ–2008–1319. Bank alleged that, on or about November 2, 2006, Moon executed a one-year promissory note payable to Bank in the principle sum of $620,255.60, with interest at a variable rate, secured by both a $100,000.00 certificate of deposit and a mortgage on a 5.63 acre tract of real property in Tulsa County, Oklahoma, that Moon defaulted in payment, and there remained a past due unpaid balance owing by Moon. Bank prayed for judgment on the note with interest accrued and accruing, application of the proceeds of the certificate of deposit to the debt, as well as foreclosure of the mortgage on real property by sheriff's sale.

---

**5.** For a more particular statement of the terms of the alleged agreement of January 7, 2008, see, footnote 2, Case No. CJ–2008–1270, Appeal No. 111,333, Section I.B., *supra.*

**6.** Section II, *infra.*

¶ 17 Moon entered an appearance in March 2008, and filed an answer in April 2008. By amended answer filed without leave of the trial court over one year later on June 23, 2009, Moon alleged that Bank "engaged in a course of conduct intended to devalue the collateral pledged by the defendants to secure the promissory note and intended to place the defendants in default of the subject note," and that Bank "breached its duty of good faith and fair dealings and engaged in conduct contrary to an agreement entered into on January 7th, 2008." Moon accordingly sought actual and punitive damages for Bank's alleged deceit and breach of duty of good faith.[7]

¶ 18 Moon's then-attorney died September 24, 2009. Bank's counsel wrote Moon, expressed the intent to pursue judgment, and urged Moon to obtain substitute counsel. In further correspondence exchanged with Bank, Moon professed his intention to obtain substitute counsel, eventually indicating he had chosen such a replacement.

¶ 19 Bank filed its motion for summary judgment on December 11, 2009, and notified both Moon and counsel Moon had indicated he would retain, but Moon failed to respond. By Journal Entry of Judgment filed January 14, 2010, the trial court granted judgment to Bank on its claims for collection of the note, foreclosure of the mortgage, and denied Moon's counterclaims, "the Court having previously decided the issue of [Moon's] breach of contract of the documents and instruments which are the subject of this action by granting judgment to the Plaintiff herein," thus "dispos[ing] of all claims of all parties hereto with judgment being entered in favor of Plaintiff." A copy of the judgment was mailed to Moon January 15, 2010.

¶ 20 On February 16, 2010, and now represented by new counsel, Moon filed a motion to vacate. Moon restated his allegations of a January 2008 "work-out" agreement with, and breached by Bank with the intent to induce his default. Moon further alleged that the death of his prior counsel, coupled with the trial court's failure to fully adjudicate the validity of his claims and defenses, constituted irregularities in obtaining judgment, on account of which, the order granting judgment to Bank should be vacated. Moon also argued Bank's actions in breach of the subsequent agreement constituted a fraud in obtaining judgment, for which additional reason, the order granting judgment to Bank should be vacated. On the same date, Moon filed a motion to stay execution and sheriff's sale pending determination of his motion to vacate, which the trial court granted.

¶ 21 After a hearing on September 14, 2010, the trial court denied Moon's motion to vacate by minute order, identical in substance to the Journal Entry of Judgment filed November 27, 2012, by which the trial court held:

> On the 14th day of September, 2010, this matter came on for decision before the undersigned Judge of the District Court upon the Motion to Vacate Final Journal Entry of Judgment and Decree of Foreclosure filed by Defendants Donald N. Moon and NLCO Inc.
>
> The Court has reviewed the Motion to Vacate by the Defendant Moon and supplemental filings. The Court finds that the motion should be respectfully denied. The recent case of *Freidman* [*Friedman*] *v. Craig*, [2010 OK CIV APP 83, 241 P.3d 681] appears to be on point here. There, the Court denied a motion to vacate summary judgment for "irregularities" under tit. 12 sec. 1031.1 after the judgment was entered while the party was unrepresented. In *Friedman*, the judgment was obtained less than a month after the attorney withdrew, after the motion had been filed. Here, the record shows that counsel did not file the motion until nearly three (3) months after the Defendant's counsel passed away, notified the Defendant by mail and [notified the] counsel that Defendant indicated to the Plaintiff he was going to hire, as well as the office of his former

---

7. The defenses, claims, and counterclaims asserted in this case are identical in form and substance to the allegations of Moon's amended answer in Case No. CJ–2008–1268, Section I.A., Case No. CJ–2008–1270, Section I.B., and Case No. CJ–2008–1272, Section I.C., *supra*. See also, footnote 2, Case No. CJ–2008–1270, Section I.B., *supra*.

attorney. A letter dated September 28, 2009, by Defendant Moon indicates Moon was aware of [his attorney's] passing and that he was going to hire counsel "within the next few weeks." A letter from counsel for the Plaintiff on October 7 encouraged Mr. Moon to follow through with his effort to obtain counsel as Plaintiff would be moving forward with the case.

In addition, the Court finds that adequate notice was given to Defendant Moon of the motion itself. A certificate of service listed Defendant on the motion and affidavit of mailing listed on the journal entry of judgment.

In reviewing the January 15 judgment, the Court finds that the moving materials submitted by Plaintiff were examined and evaluated and found that they "substantiate(d) granting judgment to the moving party." *Friedman, id.* Unlike the *Tedford [v. Divine]* case, [1987 OK 18,] 743 [734] P.2d 283 (OK 1987) a deadline was not missed by [Moon's former attorney] because of his sad passing, since the motion was not filed until three months thereafter. Therefore, as stated in *Friedman,* "a Defendant's failure to respond to a lawsuit after proper notice does not present an irregularity so as to permit vacation of a judgment or order." *Id.* at [¶ 13, 241 P.3d at 685]. While the Court is aware of the disfavor of "defaults," failure to obtain new counsel to respond to the pending matters in a three month period (four months counting the time to judgment) after becoming on notice of the need to do so, is not sufficient to vacate this Court's January 15 journal entry.

Therefore, the Court finds, adjudges, and decrees that Defendants' Motion to Vacate is denied.

¶ 22 A writ of execution issued, and the real property sold at sheriff's sale on November 5, 2010. Bank sought confirmation, which the trial court ultimately granted by order filed June 21, 2011,[8] and by order filed July 27, 2011, the trial court granted Bank a

deficiency judgment against Moon in the sum of $489,081.23 with interest.

¶ 23 Bank then obtained a writ of execution on all of Moon's defenses, claims and counterclaims he asserted in Case No. CJ–2008–1272. Bank purchased those claims at sheriff's sale on January 18, 2012, for $30,000.00, the sheriff filed his return the same date, and Bank dismissed Moon's claims and counterclaims with prejudice in that case.[9]

¶ 24 On February 13, 2012, Moon filed his objection to execution and sale of his claims and counterclaims, arguing that, at common law, those "choses in action" were not subject to seizure and sale or assignment. *See, e.g., McIntosh Grocery Co. v. Newman,* 184 N.C. 370, 114 S.E. 535 (1922). Bank responded, arguing, first, that Moon neither timely objected to execution prior to sheriff's sale, nor timely appealed the sheriff's return, thus waiving any right to complain, and second, Oklahoma law has long recognized "choses in action" and "things in action" as items of valuable personal property capable of assignment, and consequently, also subject to execution. *See, e.g.,* 25 O.S. § 26(3); 60 O.S. §§ 312, 313; *Barringer v. Bes Line Const. Co.,* 1909 OK 21, 23 Okla. 131, 99 P. 775. By minute order filed April 24, 2012, and mailed to Moon April 26, 2012, the trial court denied Moon's objection to execution on the counterclaims of Case No. CJ–2008–1272, and confirmed the sheriff's sale by minute order filed May 25, 2012.

¶ 25 On August 13, 2012, Bank obtained a writ of execution on Moon's claims and counterclaims asserted in Case No. CJ–2008–1268, Case No. CJ–2008–1270, and CJ–2008–1319, this appeal.[10] On August 23, 2012, Bank mailed to Moon a notice of sheriff's sale set for October 2, 2012.

¶ 26 On September 16, 2012, Brown filed his motion to intervene, objection to execution and request to stay execution. Brown alleged that Moon assigned to him all the

---

**8.** As corrected by order nunc pro tunc, July 18, 2011.

**9.** *See,* CJ–2008–1272, Appeal No. 111,229, Section I.C., *supra.*

**10.** *See,* Section I.A. and Section I.B., *supra.*

claims and counterclaims asserted in Case No. CJ–2008–1319 (this appeal), Case No. CJ–2008–1268 and Case No. CJ–2008–1270 on August 8, 2012, prior to issuance of the writ of execution, that those claims were not therefore subject to seizure and sale in satisfaction of the judgment against Moon, and that, as owner of the claims, he was entitled to intervene and defend his interests.

¶ 27 On the same date, Moon filed his objection to execution and request to stay execution. Moon again argued that, as "choses in action," his claims and counterclaims were not subject to seizure and sale in satisfaction of Bank's judgment against him.

¶ 28 Bank filed a motion to dismiss Brown's motion to intervene and objection to execution. Bank argued that, upon Moon's failure to appeal, the trial court's Journal Entry of Judgment and Decree of Foreclosure, filed January 14, 2010, and the Journal Entry of Judgment determining deficiency, filed July 27, 2011, fully and finally determined all of Moon's rights, including those on the merits of his defenses, claims, counterclaims or "choses in action" in this case, prior to the assignment from Moon, so that the doctrines of issue and claim preclusion barred relitigation of the same issues in post-judgment execution.

¶ 29 Bank also filed a response to Moon's objection to execution and request to stay. Bank pointed out the trial court had already rejected Moon's identical objection to execution on the claims from Case No. CJ–2008–1272, and argued that Moon's objection should accordingly be rejected again.

¶ 30 By orders dated October 2, 2012, the trial court denied Brown's motion to intervene, objection to execution and request for stay, as well as Moon's objection to execution and request for stay, and Moon's motion to reconsider denial of a stay. Also on October 2, 2012, the sheriff filed his return, reflecting purchase of Moon's counterclaims in both Case No. CJ–2008–1268 and Case No. CJ–2008–1270 by Bank for $50,000.00 each. Bank dismissed the counterclaims in Case No. CJ–2008–1270, filed a motion for sum-

mary judgment which the trial court granted, and Moon appealed.[11]

¶ 31 On November 2, 2012, Appellants filed their Petition in Error to commence the instant appeal. On December 13, 2012, Appellants filed their Amended Petition in Error, to which they attached the trial court's Journal Entries of Judgment, filed November 27, 2012, memorializing: (1) the September 14, 2010 minute order denying Moon's motion to vacate; (2) the April 24, 2012 minute order denying Moon's objection to execution; (3) the May 25, 2012 minute order denying Moon's objection to confirmation of sale; (4) the October 2, 2012 minute order denying both (a) Brown's motion to intervene, objection to execution and request for stay and (b) Moon's objection to sheriff's sale and request for stay; and (5) the October 2, 2012 minute order denying Moon's motion to reconsider the order denying his request for stay.

¶ 32 The Supreme Court has directed the determination of this case, Case No. 111,206, with Case No. 111,229 and Case No. 111,333 as companion cases. We will address Case No. 111,229 and Case No. 111,333 by separate opinion.

### B. Proposition One

¶ 33 In the first proposition of this appeal, Moon asserts the trial court abused its discretion in refusing to vacate the order granting summary judgment to Bank. In this proposition, Moon initially asserts that, in granting Bank's motion for summary judgment, the trial court ignored his valid defenses and counterclaims established by the evidentiary materials attached to his amended answer, and, in a related argument, additionally asserts the trial court failed to properly "adjudicate" the validity of his defenses and counterclaims in light of the evidentiary materials attached to his amended answer, violating his right to due process. Moon secondly asserts the evidentiary materials attached to his amended answer arguably demonstrate Bank's breach of the subsequent agreement, constituting Bank's fraud in obtaining judgment, for which the order granting judgment to Bank should have been vacated. Moon lastly challenges the trial

11. *See,* Case No. CJ–2008–1270, Appeal No. 111,-333, Section I.B., *supra.*

court's orders denying his objections to execution and granting a deficiency to Bank as premature, i.e., before the order granting judgment to Bank became final.

### 1. Motions for Summary Judgment and Motions to Vacate

¶ 34 "Summary judgment is proper only when there is no genuine issue of material fact." *Wynn v. Avemco Ins. Co.*, 1998 OK 75, ¶ 7, 963 P.2d 572, 574. (Citation omitted.) "The burden is on the moving party to establish, through evidentiary material attached to the motion for summary judgment, that no genuine issue as to any material fact exists." *Id.* "Thereafter, the opposing party must submit a statement of material facts which the party alleges are controverted and which are supported by evidentiary materials." *Id.*

¶ 35 Ordinarily, the failure to file a response to a motion for summary judgment "results ... in the admission for purpose of summary judgment '[a]ll material facts set forth in the statement of the movant which are supported by admissible evidence.'" *Spirgis v. Circle K Stores, Inc.*, 1987 OK CIV APP 45, ¶ 9, 743 P.2d 682, 684 (Approved for Publication by Supreme Court). However, "[e]ven when no counterstatement has been filed, it is still incumbent upon the trial court to insure that the motion is meritorious." *Spirgis*, 1987 OK CIV APP 45, ¶ 10, 743 P.2d at 685.

¶ 36 This is not to say, however, that summary judgment may not properly be granted where the opposing party fails to timely or properly respond, or that an order granting summary judgment upon the failure of the opponent to timely or properly respond should always be vacated. *See, e.g., Friedman v. Craig*, 2010 OK CIV APP 83, 241 P.3d 681; *Ross v. Pace*, 2004 OK 13, 87 P.3d 593. The primary question in these cases is whether, under the facts and circumstances of the particular case, the trial court abused its discretion in denying the motion to vacate after granting summary judgment by default. *Friedman*, 2010 OK CIV APP 83, ¶ 2, 241 P.3d at 683; *Ross*, 2004 OK 13, ¶ 9, 87 P.3d at 594.

¶ 37 For instance, in *Friedman*, the Court of Civil Appeals held that, where defendant's attorney failed to timely respond to plaintiff's motion for summary judgment, and the trial court granted judgment accordingly, the "defendant's failure to respond to a lawsuit after proper notice d[id] not present an 'irregularity' so as to permit vacation of a judgment or order." 2010 OK CIV APP 83, ¶ 13, 241 P.3d at 685. In *Ross*, the Supreme Court held that, "[g]iven the number of opportunities [plaintiff's] attorneys were afforded to respond to the requests for admission ..., and the notice of [the] motion for summary judgment and hearing set in the matter," the trial court did not err in granting summary judgment based on the deemed-admitted facts resulting from plaintiff's failure to respond to discovery, and did not abuse its discretion in refusing to vacate the order granting summary judgment accordingly granted. 2004 OK 13, ¶¶ 8, 12, 87 P.3d at 594, 595.

### 2. Validity of Defenses and Counterclaims

¶ 38 In the present case, it is undisputed Moon never responded to Bank's motion for summary judgment. The issue is thus, whether a review of the evidentiary materials already before the trial court revealed any controversy of material fact which would preclude the summary adjudication of Bank's claims and Moon's counterclaims.

¶ 39 In this respect, the only evidentiary materials tendered by Moon were attached to his amended answer. These materials consisted of various letters and e-mails by and between Moon's agent, Bank and the prospective lender concerning the pay-off amounts of the various notes, the consent of Moon's agent to apply the proceeds of two certificates of deposit to the amounts of interest due on the various notes, and the notice of Bank's election to exercise its right of setoff and apply the proceeds of the certificates of deposits to two of Moon's notes.

¶ 40 However, Moon filed his motion to amend over one year after he filed his initial answer, and filed his amended answer with evidentiary materials attached without first obtaining either the trial court's ruling on his motion to amend or Bank's consent. Section 2105(A) of title 12, O.S., requires

permission of the court or the written consent of the opposing party to file an amended pleading more than twenty days after service of the pleading sought to be amended, and the filing of an amended pleading without permission or consent is "without effect" and is "treated as if ... never filed." *Hunter v. Echols,* 1991 OK 114, ¶ 8, 820 P.2d 450, 453. This is so even if the opposing party responds to the amended pleading. *Williams v. Williams,* 1993 OK CIV APP 34, ¶ 6, 852 P.2d 170, 172, fn. 3.[12]

¶ 41 In the present case, the trial court never ruled on Moon's motion to amend. Moon's filing of his amended answer with materials attached is consequently regarded as an unauthorized filing without effect. Having no effect, the trial court was permitted, if not required, to disregard the amended answer and materials attached. Even if properly considered, the evidentiary materials bear out no express agreement by Bank to apply the proceeds of the certificates of deposit as requested.

¶ 42 Moreover, Bank notified Moon of its intent to pursue judgment and cautioned him to obtain substitute counsel more than once after the death of his prior counsel and before filing of its motion for summary judgment. Bank notified Moon and the counsel Moon had expressed his intent to retain of the filing of the motion for summary judgment. Although had Moon professed an intention to obtain substitute counsel for weeks after the death of his prior counsel, his substitute counsel did not enter an appearance until after the trial court granted Bank's motion for summary judgment when he filed Moon's motion to vacate. In the absence of any evidentiary materials properly before the court in response to Bank's motion for summary judgment, the trial court was justified in granting judgment to Bank on its principal claims, and to Bank on the unsupported allegations of Moon's counterclaim. Under the facts and circumstances of this case, as in *Friedman* and *Ross,* we cannot say the trial court abused its discretion in refusing to vacate as alleged in this proposition.

**3. *Fraud in Obtaining Judgment***

¶ 43 Moon also asserts the evidentiary materials demonstrate Bank's "fraud" in inducing his default, and consequent "fraud" in obtaining judgment against him. So, says Moon, because 12 O.S. § 1031(4) authorizes vacation of judgments for "fraud," the trial court erred in refusing to vacate the order granting summary judgment for Bank's demonstrated "fraud."

¶ 44 The "fraud" referred to by § 1031(4) is of two kinds. The fraud may be "extrinsic fraud," that is, fraud "perpetrated *outside* an actual adversary trial or process ... practiced directly and affirmatively on the defeated party, whereby he was prevented from presenting *fully* and *fairly* his side of the case," and may include "false representations that the defeated party is merely a nominal party against whom no relief is sought, false promises of compromise, concealment of suit, kidnaping of witnesses, and similar conduct." *Patel v. OMH Medical Center, Inc.,* 1999 OK 33, ¶ 25, 987 P.2d 1185, 1196. (Emphasis original.) (Footnotes omitted.) Or, it may be "intrinsic fraud," that is, fraud "practiced during the course of an actual adversary trial of the issues joined and which ... directly and affirmatively ... mislead[s] the defeated party to his injury after he announced that he was ready to proceed with the trial," including the use of " 'forged instruments, or perjured testimony or fails to introduce witnesses of whom he has knowledge and whose testimony would help his adversary and impair his own case.' " *Id.*

¶ 45 In the present case, the "fraud" alleged by Moon is neither. Bank engaged in no conduct constituting "extrinsic fraud" which denied Moon of his opportunity to litigate his defenses; rather, it was Moon's own delay in obtaining substitute counsel which prevented him from presenting his case on the merits. Further, Bank engaged in no "intrinsic fraud" during the course of the proceedings which mislead Moon to his prejudice. Moon did not demonstrate the "fraud" required by § 1031(4) to vacate a

**12.** "The pleading [filed without leave]'is without effect' according to *Hunter v. Echols,* 820 P.2d 450 (Okl.1991), notwithstanding the fact that the children later filed an answer to it with leave of court."

judgment, and we hold the trial court did not abuse its discretion as alleged in this proposition.

### 4. Finality of Judgments

¶ 46 In this argument, Moon asserts that the judgment of foreclosure, absent an adjudication of the validity of his defenses and counterclaims, was premature. For this proposition, Moon cites *Federal Deposit Ins. Corp. v. Tidwell*, 1991 OK 119, 820 P.2d 1338, in which the Oklahoma Supreme Court observed:

A judgment that adjudicates a plaintiff's cause of action must also adjudicate all defenses and interrelated counterclaims to that particular cause of action that were properly raised by the defendant.... "[W]hen a counterclaim is interrelated with the plaintiff's claim, no judgment is rendered in the case until all issues raised by both claims have been resolved."

The order before us specifically declined to adjudicate the legal sufficiency of the Tidwells' defense to the foreclosure of the mortgage. Thus, the order does not adjudicate the cause of action and is not a judgment....

[A]n order of sale after judgment in a foreclosure proceeding is an "execution" within section 732 of title 12.[A]n execution is premature when issued on a judgment that shows on its face that it is not final.... [T]he authorized execution and sale of the Tidwells' property prior to an adjudication of their alleged defense is not only premature but a fundamental flaw in the order.

820 P.2d at 1341–1342. (Citations omitted.) With this general statement of the law, there can be no genuine disagreement.

¶ 47 However, in the present case, Moon presented no admissible evidentiary materials either controverting the materials submitted by Bank, or supporting its defenses and counterclaims. That is, Moon wholly failed to respond to Bank's motion for summary judgment, and failed to obtain leave of the trial court or consent of Bank to file the amended answer to which evidentiary materials were attached, circumstances under which we have held the trial court was au-thorized, if not required, to disregard the attachments to his amended answer. Moreover, we have also observed that, even if properly considered, the materials do not, in our estimation, establish Bank's agreement to the "work out" plan proposed by Moon.

¶ 48 The trial court's Journal Entry of Judgment not only fully adjudicates Bank's claims, but also specifically denies Moon's counterclaims, "the Court having previously decided the issue of [Moon's] breach of contract of the documents and instruments which are the subject of this action by granting judgment to the Plaintiff herein," thus "dispos[ing] of all claims of all parties hereto with judgment being entered in favor of Plaintiff." The trial court fully and finally adjudicated all the competing claims, and Bank did not execute on its judgment against Moon until *after the trial court denied* Moon's motion to vacate. Absent the posting of a supersedeas bond or other security approved by the trial court to stay enforcement, there existed no impediment to Bank's execution on the judgment granted. 12 O.S. § 990.4.

### C. Propositions Two and Three

¶ 49 In the second proposition, Appellants argue the trial court erred in denying Brown's motion to intervene. Particularly, Appellants assert that, as assignee of all of Moon's rights to the claims and counterclaims asserted in these related cases, Oklahoma law assured Brown's intervention by right, and the trial court erred as a matter of law in denying his demand.

### 1. Intervention

¶ 50 We concede that Oklahoma law mandates that permission to intervene be granted in some circumstances:

A. INTERVENTION OF RIGHT. Upon timely application anyone shall be permitted to intervene in an action:

1. When a statute confers an unconditional right to intervene; or

2. When the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition

of the action may as a practical matter impair or impede the applicant's ability to protect that interest.

12 O.S. § 2024(A). Under this section, Brown claims an absolute right to intervene as assignee of Moon's claims and counterclaims asserted in these related actions. However, Brown's right to intervene depends on the resolution of two questions: (1) whether Moon's claims and counterclaims were capable of assignment, and (2) whether Moon possessed any assignable interest in the claims and counterclaims at the time of the assignment to Brown.

### 2. Choses of Action

#### a. Assignment

¶ 51 On the first question, "[t]he words 'personal property' include money, goods, chattels, things in action and evidences of debt." 25 O.S. § 26(3). "A thing in action is a right to recover money or other personal property, by judicial proceedings." 60 O.S. § 312. And, "[a] thing in action, arising out of the violation of a right of property, or out of an obligation, may be transferred by the owner...." 60 O.S. § 313.

¶ 52 Early in statehood, the Oklahoma Supreme Court equated a "chose in action" with a "thing in action," and, under the statutory predecessor to § 313, recognized the right of an owner to assign a "chose in action":

> The purpose of [the statute, now, 60 O.S. § 313] was not to prohibit parties from contracting that their contracts shall not be assignable. The intention of this statute and of similar statutes as they exist in other states is to remove the restriction of the common-law rule upon choses in action which prevented their transfer and to permit the assignee to maintain suit in his own name.

*Barringer,* 1909 OK 21, ¶ 2, 99 P. at 776. To the extent Moon cites *McIntosh Grocery Co. v. Newman,* 184 N.C. 370, 114 S.E. 535 (1922) in support of the common-law rule proscribing assignment of "choses in action," Oklahoma law has clearly departed from the common law rule.

¶ 53 Accordingly, the Oklahoma Court of Appeals has held that claims arising out of a breach of contract are freely assignable. *Chimney Rock Ltd. Partnership v. Hongkong Bank of Canada,* 1993 OK CIV APP 94, ¶ 11, 857 P.2d 84, 88. In *Chimney Rock,* the Court of Appeals also recognized that, even while 12 O.S. § 2017(D) prohibits the assignment of claims not arising out of contract, where the breach of contract gives rise to a tort, "the basis of the wrong [is still] a contract," and a tort claim arising from a contract's breach is "assignable as arising out of contract." 1993 OK CIV APP 94, ¶ 11, 857 P.2d at 88.

¶ 54 Under these authorities, we have no difficulty holding that, to the extent Moon's claims and counterclaims arose out of the alleged breach of the subsequent agreement, or, to the extent the alleged breach of the subsequent agreement gave rise to claims in tort, Moon's claims were assignable as arising out of contract. The question remains, however, whether Moon possessed any interest in the claims and counterclaims capable of assignment at the time of the assignment. The answer to this question depends on the resolution of Moon's third proposition.

#### b. Execution

¶ 55 Appellants contend in their last and related third proposition that Oklahoma law does not permit either Bank's seizure and sale of Moon's defenses, claims and counterclaims in these related cases to satisfy its judgment, or, as purchaser at sheriff's sale, Bank's subsequent dismissal of those defenses, claims and counterclaims with prejudice. Appellants argue that, to permit such a course of conduct leaves them defenseless in Bank's actions to collect on notes and foreclose mortgages, and unjustly approves, at the very least, an abuse of process, and at the worst, an "extortionate perversion of questionably lawfully initiated process to illegitimate ends."

¶ 56 "Every kind of property that is not real property is personal." 60 O.S. § 9. As we have previously noted, "[t]he words 'personal property' include money, goods, chattels, *things in action* and evidences of debt." 25 O.S. § 26(3) (Emphasis added.). " 'The term "personal property" in its broad-

est legal signification includes everything the subject of ownership not being land or any interest in land, [such] as goods, chattels, money, notes, bonds, stocks and *choses in action* generally. . . .'" *Southwestern Bell Telephone Co. v. Oklahoma State Bd. of Equalization,* 2009 OK 72, ¶ 16, 231 P.3d 638, 643. (Emphasis added.)

¶ 57 Further:

At any time after judgment, *any property of the judgment debtor,* including any equitable interest he may have, unless by law expressly excluded from being reached by creditors shall be subject to the payment of such judgment, by action, or as hereinafter provided.

12 O.S. § 841. (Emphasis added.) Under this section, "a judgment creditor may proceed against any interest under a contract, claim or *chose in action* due or to become due the judgment debtor." *Rucks–Brandt Const. Corp. v. Silver,* 1944 OK 215, ¶ 0(3), 194 Okla. 324, 151 P.2d 399. (Emphasis added.) Upon sheriff's sale and confirmation, the purchaser acquires all the interest the debtor owned. 12 O.S. § 766.

¶ 58 In this respect, the parties cite, and we find, no Oklahoma authority on point. In 2006, however, the Mississippi Supreme Court addressed the precise issue before us. *Citizens Nat. Bank v. Dixieland Forest Products, LLC,* 935 So.2d 1004 (Miss.2006).

¶ 59 In *Citizens Nat. Bank,* the plaintiffs commenced an action against their bank, and alleged "a variety of lender liability claims" for which they sought awards of actual and punitive damages. 935 So.2d at 1006, ¶ 2. In its answer, Bank "included counterclaims for debts owed to it by the plaintiffs. . . ." 935 So.2d at 1006, ¶ 3.

¶ 60 Bank subsequently sought and obtained judgment against plaintiffs on their debts, leaving "unresolved after the disposition of the bank's summary judgment motions [the plaintiffs'] lender liability claims against the bank and the bank's claims for attorney's fees and collection costs." *Citizens Nat. Bank,* 935 So.2d at 1007, ¶ 5. "However, in entering the summary judgments on August 23, 2004, the trial court stated there was 'no just reason for delay

and this judgment should be made final under Rule 54, MRCP,'" "plaintiffs did not appeal the summary judgments, and they are therefore now final." *Id.*

¶ 61 The bank subsequently had issued writs of execution on the plaintiffs' lender-liability claims, and purchased those claims at sheriff's sale. *Citizens Nat. Bank,* 935 So.2d at 1007, ¶ 7. "The bank then filed a motion in the lender liability suit (which it had purchased) to substitute itself as the party plaintiff and to have the suit dismissed," but "the trial court denied the bank's motion," and the bank appealed. 935 So.2d at 1008, ¶¶ 10, 11.

¶ 62 The Supreme Court of Mississippi reversed and rendered an order granting the bank's motion to substitute and dismiss. *Citizens Nat. Bank,* 935 So.2d at 1014, ¶ 42. In accord with its own statutory provisions and its own precedent, in substantial accord with the Oklahoma law and precedent we have previously cited, the Mississippi Supreme Court first held "a chose in action is subject to a writ of execution," and, "[a]s with any other personal property, a chose in action's value—for purposes of levy and execution—is determined at a sheriff's execution sale." 935 So.2d at 1010, ¶¶ 19, 20. The Mississippi Supreme Court secondly held that, absent plaintiffs' appeal of the judgment granted to bank, the judgment was final, and "the bank properly initiated a sheriff's execution sale against the plaintiffs' choses in action." 935 So.2d at 1010, 1011, ¶¶ 21, 23. The Mississippi Supreme Court also rejected plaintiffs' argument that bank's "sham purchase" of the claims for far less than their worth "was merely pretense to force them to pay more than necessary to bring current their debts." 935 So.2d at 1012, ¶¶ 30, 31.

¶ 63 The Mississippi Supreme Court then held, "[U]nder both statutory and case law, the bank became the owner of the plaintiffs' lawsuits (choses in action) when it purchased them at the sheriff's execution sale." *Citizens Nat. Bank,* 935 So.2d at 1013, ¶ 36. So, said the Court, after the sheriff's sale and purchase by the bank, "[t]he plaintiffs no longer ha[d] a stake in the unresolved lender liability claims asserted against the bank," and "the bank ha[d] the only real interest

remaining in those claims." 935 So.2d at 1013, ¶ 37. In so holding, the Mississippi Supreme Court observed:

> ... Even if application of the law might be inequitable in rare cases, there are no exceptions in the relevant statutes, rules, or cases that would prevent the bank from substituting itself as plaintiff in the choses in action it purchased. This Court is without authority to invalidate statutes simply because we find they may occasionally engender what we consider to be inequitable results. Such considerations are for the Legislature. We conclude the trial court erred in denying the bank's Motion to Substitute Party Plaintiffs.

935 So.2d at 1014, ¶ 39. The Mississippi Supreme Court thus held that, as owner of the plaintiffs' "choses in action," the bank was entitled to dismiss those claims, and the trial court erred in denying bank's motion to substitute and dismiss. 935 So.2d at 1014, ¶ 42.

¶ 64 In the present case, Moon failed to respond to Bank's motion for summary judgment, and failed to obtain leave to file his amended answer to which was appended evidentiary materials ostensibly supporting the counterclaims. We have held the trial court was then authorized to treat the filing of the amended answer with materials attached as without effect. On review of the only evidentiary materials properly before it, the trial court granted judgment to Bank and specifically denied Moon's counterclaims, fully and finally determining all issues in the case. That judgment became final upon Moon's failure to appeal, and could only be challenged by a timely commenced proceeding to vacate, which the trial court denied.

¶ 65 Consequently, absent the posting of a supersedeas bond or other security approved by the trial court to stay enforcement by Moon, there existed no impediment to Bank's execution on the judgment granted against Moon. In the pursuit of lawful post-judgment collection proceedings *after denial of Moon's motion to vacate,* Bank executed on Moon's real and personal property, including, in January 2012, Moon's interest in any claims or choses in action asserted in Case No. CJ–2008–1272, and, in October 2012, Moon's interest in any claim or choses in action asserted in CJ–2008–1268, CJ–2008–1270 and this case, CJ–2008–1319. Moon's claims, counterclaims, and choses in action in that case were subject to execution, and the trial court did not err in denying the objections to execution by Moon and Brown.

¶ 66 Further, Bank purchased Moon's claims and counterclaims asserted in CJ–2008–1272, whether sounding in contract, or in tort arising out of the contract, at sheriff's sale on January 17, 2012. Bank then became the owner and Moon no longer had any interest in those identical "choses in action," whether asserted in CJ–2008–1268, CJ–2008–1270, CJ–2008–1272, or this case, CJ–2008–1319. At the time of the assignment to Brown, Moon owned no interest in those defenses, claims and counterclaims capable of assignment, and Brown consequently acquired no interest in Moon's defenses, claims and counterclaims by virtue of the purported assignment from Moon August 8, 2012. Having received no interest in those claims by assignment, Brown was not entitled to intervene.

### III. Conclusion

¶ 67 We hold the trial court did not abuse its discretion in denying Moon's motion to vacate, objections to execution or requests for stay. We further hold the trial court did not err as a matter of law in denying Brown's motion to intervene, and did not abuse its discretion in denying Brown's objection to execution or request for stay. The orders of the trial court are AFFIRMED.

BUETTNER, P.J., and BELL, J., concur.